**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

OREGON RESTAURANT AND
LODGING ASSOCIATION, a non-profit
Oregon corporation; WASHINGTON
RESTAURANT ASSOCIATION, a non-
profit Washington corporation;
ALASKA CABARET, HOTEL,
RESTAURANT & RETAILERS
ASSOCIATION, a non-profit Alaska
corporation; NATIONAL
RESTAURANT ASSOCIATION, a non-
profit Illinois corporation; DAVIS
STREET TAVERN LLC, an Oregon
limited liability company; SUSAN
PONTON, an individual,
        *Plaintiffs-Appellees*,

v.

THOMAS PEREZ, in his official
capacity as Secretary of the U.S.
Department of Labor; LAURA
FORTMAN, in her official capacity as
Deputy Administrator of the U.S.
Department of Labor; U.S.
DEPARTMENT OF LABOR,
        *Defendants-Appellants*.

No. 13-35765

D.C. No.
3:12-cv-01261-
MO

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

| | |
|---|---|
| JOSEPH CESARZ; QUY NGOC TANG, individually and on behalf of all others similarly situated, and all persons whose names are set forth in Exhibit A to the First Amended Complaint, <br> *Plaintiffs-Appellants*, <br><br> v. <br><br> WYNN LAS VEGAS, LLC; ANDREW PASCAL; STEVE WYNN, <br> *Defendants-Appellees*. | No. 14-15243 <br><br> D.C. No. 2:13-cv-00109-RCJ-CWH <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Argued and Submitted
July 10, 2015—Portland, Oregon[*]

Filed February 23, 2016

---

[*] We heard oral argument in these two cases together, and we now consolidate them for disposition. *See* Fed. R. App. P. 3(b)(2); *Mattos v. Agarano*, 661 F.3d 433, 436 n.1 (9th Cir. 2011) (en banc).

Before: Harry Pregerson, N. Randy Smith,
and John B. Owens, Circuit Judges.

Opinion by Judge Pregerson;
Dissent by Judge N.R. Smith

### SUMMARY[**]

**Fair Labor Standards Act**

The panel reversed the district courts' decisions in favor of employers, and held that *Cumbie v. Woody Woo, Inc*., 596 F.3d 577 (9th Cir. 2010), did not foreclose the Department of Labor's ability to promulgate subsequently a formal rule that extended the tip pooling restrictions of Section 203(m) of the Fair Labor Standards Act of 1938 ("FLSA"); and remanded for further proceedings.

Under 29 U.S.C. § 203(m), an employer may fulfill part of its hourly minimum wage obligation to a tipped employee with the employee's tips by taking a tip credit; and the tip pool is valid if it is comprised exclusively of employees who are "customarily and regularly" tipped. In 2010, in *Cumbie*, the court held that a tip pooling arrangement comprised of both customarily tipped employees and non-customarily tipped employees did not violate section 203(m) of the FLSA because section 203(m) was silent as to employers who do not take a tip credit. In 2011, the Department of Labor promulgated a formal rule that extended the tip pool

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

restrictions of section 203(m) to all employers, not just to those who take a tip credit. 76 Fed. Reg. 18,832, 18,841–42 (April 5, 2011).

The district courts in these cases held that *Cumbie* foreclosed the Department of Labor's ability to promulgate the 2011 rule and that the 2011 rule was invalid because it was contrary to Congress's clear intent.

The panel held that the Department of Labor may regulate the tip pooling practices of employers who do not take a tip credit. The panel disagreed with the district courts' applications of *Cumbie* and their analyses under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The panel held that FLSA section 203(m)'s clear silence as to employers who do not take a tip credit left room for the Department of Labor to promulgate the 2011 rule. The panel concluded that step one of the *Chevron* analysis was satisfied. At *Chevron* step two, the panel concluded that the Department of Labor's interpretation in the 2011 rule was reasonable. The panel held that the Department of Labor's regulation withstood *Chevron* review.

Judge N.R. Smith dissented because he would hold that the cases are controlled by the holding in *Cumbie*, and he would affirm the district courts.

## COUNSEL

John S. Koppel (argued) and Michael Jay Singer, Attorneys, United States Department of Justice, Civil Division, Washington, D.C.; Stuart F. Delery, Assistant Attorney General, Office of the Attorney General, Washington, D.C.; S. Amanda Marshall, United States Attorney, United States Attorneys' Office, Oregon, for Defendants-Appellants Thomas Perez, et al.

Joshua D. Buck (argued), Thierman Buck, Reno, Nevada; Leon Greenberg and Dana Sniegocki, Leon Greenberg Professional Corporation, Las Vegas, Nevada, for Plaintiffs-Appellants Joseph Cesarz and Quy Ngoc Tang.

Paul DeCamp (argued), Jackson Lewis P.C., Reston, Virginia; Nicholas M. Beerman, Peter H. Nohle, and William Robert Donovan, Jr., Jackson Lewis P.C., Seattle, Washington; Scott Oberg Oborn, Jackson Lewis P.C., Portland, Oregon, for Plaintiffs-Appellees Oregon Restaurant and Lodging Association, et al.

Eugene Scalia (argued) and Alexander Cox, Gibson Dunn & Crutcher LLP, Washington, D.C.; Gregory J. Kramer and Brian J. Cohen, Kramer Zucker Abbott, Las Vegas, Nevada, for Defendants-Appellees Wynn Las Vegas, LLC, et al.

**OPINION**

PREGERSON, Senior Circuit Judge:

Under the Fair Labor Standards Act of 1938 ("FLSA"), as amended in 1974, an employer may fulfill part of its hourly minimum wage obligation to a tipped employee with the employee's tips. 29 U.S.C. § 203(m). This practice is known as taking a "tip credit." Section 203(m) of the FLSA obligates employers who take a tip credit to (1) give notice to its employees, and (2) allow its employees to retain all the tips they receive, unless such employees participate in a valid tip pool. *Id.* Under section 203(m), a tip pool is valid if it is comprised exclusively of employees who are "customarily and regularly" tipped. *Id.*

In both cases before this court, Employer-Appellees did not take a tip credit against their minimum wage obligation; they paid their tipped employees at least the federal minimum wage. Employer-Appellees required their employees to participate in tip pools. Unlike the tip pools contemplated by section 203(m), however, these tip pools were comprised of both customarily tipped employees and non-customarily tipped employees.

In 2010, we held in *Cumbie v. Woody Woo, Inc.* that this type of tip pooling arrangement does not violate section 203(m) of the FLSA, because section 203(m) was silent as to employers who do not take a tip credit. 596 F.3d 577, 583 (9th Cir. 2010). In 2011, shortly after *Cumbie* was decided, the Department of Labor ("DOL") promulgated a formal rule ("the 2011 rule") that extended the tip pool restrictions of section 203(m) to all employers, not just those who take a tip credit. 76 Fed. Reg. 18,832, 18,841–42 (April 5, 2011).

The United States District Court for the District of Oregon held that *Cumbie* foreclosed the DOL's ability to promulgate the 2011 rule and that the 2011 rule was invalid because it was contrary to Congress's clear intent. *Or. Rest. & Lodging v. Solis*, 948 F. Supp. 2d 1217, 1218, 1226 (D. Or. 2013). The United States District Court for the District of Nevada followed suit. *Cesarz v. Wynn Las Vegas, LLC*, No. 2:13-cv-00109-RCJ-CWH, 2014 WL 117579, at *3 (D. Nev. Jan. 10, 2014). For the reasons set forth below, we reverse both district court decisions.

## Background

In 1937, President Franklin Delano Roosevelt challenged Congress "to devise ways and means of insuring to all our able-bodied working men and women a fair day's pay for a fair day's work. A self-supporting and self-respecting democracy can plead no justification for . . . chiseling workers' wages . . . ." H.R. Rep. No. 93-913 at 5–6 (1974). One year later, in 1938, Congress passed the FLSA. 29 U.S.C. § 201. "[T]he FLSA was designed to give specific minimum protections to *individual* workers and to ensure that *each* employee covered by the Act . . . would be protected from the 'evil of overwork as well as underpay.'" *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942)) (internal quotation marks omitted). The FLSA was intended to provide "greater dignity and security and economic freedom for millions of American workers." H.R. Rep. No. 93-913 at 6 (1974) (quoting President Kennedy).

In 1942, the Supreme Court in *Williams v. Jacksonville Terminal Co.* addressed the question whether tips are a

component of an employee's wages under the FLSA. 315 U.S. 386, 388 (1942). The petitioners, who worked as "red caps" or baggage handlers, earned a combination of wages and tips that equaled the FLSA prescribed minimum wage. *Id.* They sued their employer, arguing that the FLSA required that they be paid the minimum wage without regard to their earnings from tips. *Id*. at 389. The Court held that "where tipping is customary, the tips, in the absence of an explicit contrary understanding, belong to the recipient." *Id.* at 397. However, when "an arrangement is made by which the employee agrees to turn over the tips to the employer, in the absence of statutory interference, no reason is perceived for its invalidity." *Id.* Because the baggage handlers continued to work after being notified that tips would constitute part of their wages, the Court held that they accepted this new compensation arrangement. *Id.* at 398.

After *Jacksonville Terminal*, the FLSA underwent a series of amendments, which "extended the Act's coverage." H.R. Rep. 93-913 at 4. These amendments raised the federal minimum wage and expanded the FLSA's coverage to various public and private sector employees. In 1966, the FLSA was amended to include hotel and restaurant employees. 73 Fed. Reg. 43,654, 43,659 (July 28, 2008). To alleviate the new minimum wage obligations of hotels and restaurants, "the 1966 amendments also provided for the first time, within section [20]3(m)'s definition of a 'wage,' that an employer could utilize a limited amount of its employees' tips as a credit against its minimum wage obligations . . . through a so-called 'tip credit.'" 76 Fed. Reg. at 18,838.

In 1974, the FLSA was again amended. First, Congress expressly delegated to the DOL the broad authority "to prescribe necessary rules, regulations, and orders" to

implement the FLSA amendments of 1974. Pub. L. No. 93-259, § 29(b), 88 Stat. 55 (1974). Second, Congress revised the language in 29 U.S.C. § 203(m) to read:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> (1) the cash wage paid such employee which for purposes of such determination shall not be less than the cash wage required to be paid such an employee on [August 20, 1996]; and
>
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.[1]

---

[1] In other words, under section 203(m) there are two components of the employer's wage obligation to tipped employees: the employer's cash wage obligation to the employee and the employee's tips. The combination of the employer's cash wage and the employee's tips must equal at least the federal minimum wage. Currently, the employer's minimum cash wage obligation to the employee is $2.13 per hour and the federal minimum wage is $7.25 per hour.

If the employee earns at least $5.12 per hour in tips, then the employer has no further cash wage obligation because the employer's minimum wage obligation of $2.13 plus the employee's tips of at least $5.12 equals the minimum wage. In this example, the employer would be taking a tip credit of $5.12 per hour.

If the employee earns less than $5.12 per hour in tips, the employer would be responsible for making up the difference between the tip credit

> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m). As amended in 1974, section 203(m) required employers to give their employees prior notice of their intent to use a tip credit and "made it clear that tipped employees must receive at least minimum wage and must generally retain any tips." 73 Fed. Reg. at 43,659.

In 2010, we held in *Cumbie v. Woody Woo, Inc.* that section 203(m) does not restrict the tip pooling practices of employers who do not take tip credits. 596 F.3d at 583. The employer, Woody Woo, Inc., paid its servers a cash wage that exceeded the federal minimum wage but required its servers to contribute their tips to a "tip pool" that included employees who were not regularly or customarily tipped. *Id.* at 578–79. The servers claimed that Woody Woo's tip pooling practice violated section 203(m) because the practice included non-customarily tipped employees. *Id.* at 579. We applied the "default" rule from *Jacksonville Terminal*, and found that "in

---

and the minimum wage. For example, if an employee receives $1.00 per hour in tips, the employer would be required to pay $6.25 per hour. In this example, the employer would be taking a tip credit of $1.00 per hour.

the absence of statutory interference, no reason is perceived for [Woody Woo's tip pooling practice's] invalidity." *Id.* (quoting *Jacksonville Terminal*, 315 U.S. at 397) (emphasis and internal quotation marks omitted).

In *Cumbie*, we read section 203(m) to apply only to employers who did take a tip credit; for these employers, section 203(m) is considered "statutory interference." 596 F.3d at 581. In contrast, for an employer that meets its minimum wage obligation without taking a tip credit, section 203(m) is silent; therefore, there is no statutory interference. Without statutory interference, *Jacksonville Terminal's* default rule controlled, and we concluded that Woody Woo's tip pooling practice was valid. *Id.* at 583.

In 2008, two years *before* the *Cumbie* decision, the DOL published a notice of proposed rulemaking and request for comments under the Administrative Procedure Act, 5 U.S.C. §§ 556–557. The lengthy notice set forth specific revisions to sections that governed tipped employees in order "to incorporate . . . legislative history, subsequent court decisions, and the [DOL's] interpretations" into the FLSA. 73 Fed. Reg. at 43,659. More than ten different organizations submitted comments. These comments and the *Cumbie* decision disclosed that section 203(m)'s tip pooling restrictions could be read to apply *only* to employers who take a tip credit. The comments also revealed that section 203(m) could encourage abuse in an already "high-violation industry." *See* 76 Fed. Reg. at 18,840–42.

In 2011, in response to these comments and the statutory silence that *Cumbie* exposed, the DOL promulgated new rules to make it clear that tips are the property of the employee. *Id.* at 18,841–42; 29 C.F.R. §§ 531.52, 531.55, 531.59.

Specifically, the DOL revised 29 C.F.R. § 531.52 by replacing the sentence:

> In the absence of an agreement to the contrary between the recipient and a third party, a tip becomes the property of the person in recognition of whose service it is presented by the customer.

with the following language:

> Tips are the property of the employee whether or not the employer has taken a tip credit under section [20]3(m) of the FLSA. The employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section [20]3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool.

*Compare* 32 Fed. Reg. 13,575, 13,580 (Sept. 28, 1967), *with* 29 C.F.R. § 531.52 (2011). The 2011 rule expressly prohibits the use of a tip pool that violates section 203(m) regardless of whether an employer uses a tip credit.

These revisions to 29 C.F.R. § 531.52 are the subject of the two cases before us. The Oregon Restaurant and Lodging Association, consisting of restaurants, taverns, and one individual, brought suit against the DOL, challenging the validity of the 2011 rule and seeking to enjoin its enforcement. Later, a group of casino dealers brought suit against their employer, Wynn Las Vegas, LLC, challenging

Wynn's tip pooling practice as violating the 2011 rule. In both cases, the employers paid the employees at least the federal minimum wage and did not take a tip credit. The employers also instituted tip pools, in which customarily tipped employees, i.e., servers and casino dealers, were required to share tips with non-customarily tipped employees, i.e., kitchen staff and casino floor supervisors. Both district courts sided with the employers, relying in large part on our holding in *Cumbie*.[2]   The DOL and the casino dealers appealed.

## Discussion

### I.  Standard of Review

We review a district court's grant of summary judgment *de novo*. *Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025, 1035 (9th Cir. 2013). We also review a district court's grant of a motion to dismiss *de novo*. *Fayer v. Vaughn*, 649 F.3d 1061, 1063–64 (9th Cir. 2011).

We review the validity of an agency's regulatory interpretation of a statute under the two-step framework set forth in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).[3]   The first step is to ask, "has

---

[2] In Oregon, the district court granted summary judgment in favor of the Oregon Restaurant and Lodging Association. In Nevada, the district court granted Wynn's motion to dismiss under 12(b)(6) for failure to state a claim.

[3] At *Chevron* step zero, we ask whether the *Chevron* framework applies at all. An "administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the

[Congress] directly spoken to the precise question at issue."
*Id*. at 842.  If Congress's intent is clear, then that is the end of
our inquiry.  *Id.* at 842–43.  If, however, "the statute is silent
or ambiguous with respect to the specific issue," we proceed
to step two and ask if the agency's action is "based on a
permissible construction of the statute."  *Id.* at 843.  Even if
we believe the agency's construction is not the *best*
construction, it is entitled to "controlling weight unless [it is]
arbitrary, capricious, or manifestly contrary to the statute."
*Id.* at 844; *see also Nat'l Cable & Telecomms. Ass'n v. Brand
X Internet Servs.("Brand X")*, 545 U.S. 967, 980 (2005).

## II.  Analysis

When the Oregon district court and the Nevada district
court conducted their *Chevron* analysis, both held that
*Cumbie* left "no room" for the DOL to promulgate its 2011
rule and thus granted Oregon Restaurant & Lodging's motion
for summary judgment, *Or. Rest. & Lodging*, 948 F. Supp. 2d
at 1226, and Wynn's motion to dismiss, *Cesarz*, 2014 WL
117579, at *3.  We disagree with the district courts'
applications of *Cumbie* and their *Chevron* analyses.

---

force of law, and that the agency interpretation claiming deference was
promulgated in the exercise of that authority."  *United States v. Mead
Corp.*, 533 U.S. 218, 226–27 (2001).  In 1974, Congress granted the
Secretary of Labor the authority to "prescribe necessary rules, regulations,
and orders with regard to the [1974] amendments" to the FLSA, which
included section 203(m).  Pub. L. No. 93-259, § 29(b), 88 Stat. 55, 76.
The DOL exercised its rulemaking authority within its substantive field
when it promulgated the 2011 rule.  This is sufficient to satisfy the
*Chevron* step zero inquiry.  *See City of Arlington v. FCC*, 133 S. Ct. 1863,
1874 (2013).

## A. *Chevron* Step One

The precise question before this court is whether the DOL may regulate the tip pooling practices of employers who do not take a tip credit.  The restaurants and casinos argue that we answered this question in *Cumbie*.  We did not.

Our task in *Cumbie* was to decide whether a restaurant's tip pooling practice violated the FLSA.  596 F.3d at 578.  We did not hold that the FLSA unambiguously and categorically protects the practice in question.  Rather, we held that "nothing in the text purports to restrict" the practice in question.  *Id*. at 583.  In reaching this holding, we relied on *Christensen*, in which the "Supreme Court . . . made clear that an employment practice does not violate the FLSA unless the FLSA *prohibits* it."  *Id*. (citing *Christensen v. Harris Cty*, 529 U.S. 576, 588 (2000)).  *Christensen* illustrates the crucial distinction between statutory language that affirmatively protects or prohibits a practice and statutory language that is silent about that practice.

In *Christensen*, the plaintiffs-employees worked a substantial amount of unpaid overtime for their employer, Harris County, for which the employees accumulated "compensatory time" in lieu of cash compensation at a rate of one and a half hours for every hour of overtime worked.  529 U.S. at 579–80.  The FLSA expressly authorized the use of the compensatory time but also set a statutory cap on the amount of compensatory time an employee could accrue, after which the employer would be required to pay monetary compensation for every additional hour of overtime worked.  *Id*.  To avoid having to pay large sums of monetary overtime compensation, Harris County enacted a policy whereby it could force its employees to use their compensatory time so

that they would not reach the statutory cap. *Id*. at 580–81. The employees sued and argued that Harris County's policy violated a provision of the FLSA that required employers to reasonably accommodate employee requests to use compensatory time. *Id*. at 581 (citing 29 U.S.C. § 207(o)(5)).

The Supreme Court rejected the employees' argument because "no relevant statutory provision expressly or implicitly prohibits" the employer's policy. *Id*. at 588. As we held in *Cumbie*, the Court in *Christensen* held that the employer's policy did not violate the FLSA because nothing in the FLSA prohibited the employer's policy. *Id*. at 585–86. The Court reasoned that "[b]ecause the statute is *silent* on this issue and because Harris County's policy is entirely compatible with [the statute]," there was no violation. *Id*. at 585 (emphasis added). Thus, just as we did in *Cumbie*, the Court in *Christensen* construed the FLSA's silence in favor of the employer.

But, critically, the Court in *Christensen* did not preclude the DOL from enacting future regulations that prohibited the challenged policy. Indeed, the Court suggested that were the agency to enact future regulations, *Chevron* deference would apply. *See id*. at 586–87. The Court noted that "[o]f course, the framework of deference set forth in *Chevron* does apply to an agency interpretation contained in a regulation. But in this case the Department of Labor's regulation does not address the issue of compelled compensatory time." *Id*. at 587. The Court also acknowledged that the DOL had issued an opinion letter on the subject, but noted that an interpretation in an opinion letter is not entitled to *Chevron* deference because it is "not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking." *Id*. Five Justices joined this portion of the Court's opinion,

including Justice Souter, who filed a single-sentence concurrence:

> I join the opinion of the Court on the assumption that it does not foreclose a reading of the Fair Labor Standards Act of 1938 that allows the Secretary of Labor to issue regulations limiting forced use.

*Id*. at 589 (Souter, J., concurring).  The Court's comments regarding *Chevron* deference, along with Justice Souter's concurrence, suggest that the DOL, by regulation, could prohibit the very practice the Court held to be neither explicitly nor implicitly prohibited by the FLSA.  Following that reasoning, *Cumbie* should not be read to foreclose the DOL's ability to subsequently issue a regulation prohibiting the challenged tip pooling practice.

Here, the Oregon district court, the Nevada district court, the parties, and the dissent overlook the part of *Christensen* that discussed *Chevron* deference and Judge Souter's concurrence.  Instead, the district courts, the parties, and the dissent focus their attention on the rule from *Brand X*.

In *Brand X*, the Supreme Court held that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."  545 U.S. at 982.  Relying on *Brand X*, the restaurants and casinos argued that *Cumbie* trumps the 2011 rule because *Cumbie* relied on the "clear" language of the FLSA.  The district courts adopted this

position. *Or. Rest. & Lodging*, 948 F. Supp. 2d at 1223; *Cesarz*, 2014 WL 117579 at *3.

But as *Christensen* strongly suggests, there is a distinction between court decisions that interpret statutory commands and court decisions that interpret statutory silence. Moreover, *Chevron* itself distinguishes between statutes that directly address the precise question at issue and those for which the statute is "silent." *Chevron*, 467 U.S. at 843. As such, if a court holds that a statute unambiguously protects or prohibits certain conduct, the court "leaves no room for agency discretion" under *Brand X*, 545 U.S. at 982. However, if a court holds that a statute does not prohibit conduct because it is silent, the court's ruling leaves room for agency discretion under *Christensen*.

*Cumbie* falls precisely into the latter category of cases—cases grounded in statutory silence. When we decided *Cumbie*, the DOL had not yet promulgated the 2011 rule. Thus, there was no occasion to conduct a *Chevron* analysis in *Cumbie* because there was no agency interpretation to analyze.[4] The *Cumbie* analysis was limited

---

[4] In *Cumbie*, after citing *Jacksonville Terminal* for the "background principle" that an arrangement to turn over or redistribute tips is valid "in the absence of statutory interference," we noted that we "need not decide whether" the DOL's over forty-year-old regulations governing tips "are still valid and what level of deference they merit" "because we conclude that the meaning of the FLSA's tip credit provision is clear." 596 F.3d at 579 & n.6. However, the DOL regulations at the time did not specifically address the issue of employers who require tip pooling and do not take a tip credit. *See* 32 Fed. Reg. at 13,580; *see also Christensen*, 529 U.S. at 587. Moreover, contrary to the dissent's assertion, our characterization in *Cumbie* of the FLSA's tip credit provision as "clear" does not necessarily foreclose agency discretion. What was "clear" in *Cumbie* was that the FLSA's tip credit provision did not impose any "statutory interference"

to the text of section 203(m).  After a careful reading of section 203(m) in *Cumbie*, we found that "nothing in the text of the FLSA purports to restrict employee tip-pooling arrangements when no tip credit is taken" and therefore there was "no statutory impediment" to the practice.  596 F.3d at 583.  Applying the reasoning in *Christensen*, we conclude that section 203(m)'s clear silence as to employers who do not take a tip credit has left room for the DOL to promulgate the 2011 rule.  Whereas the restaurants, casinos, and the district courts equate this silence concerning employers who do not take a tip credit to "repudiation" of future regulation of such employers, we decline to make that great leap without more persuasive evidence.  *See United States v. Home Concrete & Supply, LLC*, 132 S. Ct 1836, 1843 (2012) ( "[A] statute's silence or ambiguity as to a particular issue means that Congress has . . . likely delegat[ed] gap-filling power to the agency[.]"); *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 222 (2009) ("[S]ilence is meant to convey nothing more than a refusal to tie the agency's hands . . . ."); *S.J. Amoroso Constr. Co. v. United States*, 981 F.2d 1073, 1075 (9th Cir. 1992) ("Without language in the statute so precluding [the agency's challenged interpretation], it must be said that Congress has not spoken to the issue.").

In sum, we conclude that step one of the *Chevron* analysis is satisfied because the FLSA is silent regarding the tip pooling practices of employers who do not take a tip credit.  Our decision in *Cumbie* did not hold otherwise.

---

that would invalidate tip pooling when no tip credit is taken – i.e., that the FLSA was silent regarding this practice.

## B. *Chevron* Step Two

Having found that the statute is silent as to the precise question at issue, we continue to step two.  At *Chevron* step two, we must determine if the DOL's interpretation is reasonable. *Chevron*, 467 U.S. at 843–44.  This is a generous standard, requiring deference "even if the agency's reading differs from what the court believes is the best statutory interpretation." *Brand X*, 545 U.S. at 980.  We may reject an agency's construction only if it is arbitrary, capricious, or manifestly contrary to the statute. *Chevron*, 467 U.S. at 844. To determine whether the DOL's interpretation is reasonable, "we look to the plain and sensible meaning of the statute, the statutory provision in the context of the whole statute and case law, and to the legislative purpose and intent." *Nat. Res. Def. Council v. U.S. Envtl. Prot. Agency*, 526 F.3d 591, 605 (9th Cir. 2008) (citation omitted).

The DOL promulgated the 2011 rule after taking into consideration numerous comments and our holding in *Cumbie*.  The AFL-CIO, National Employment Lawyers Association, and the Chamber of Commerce all commented that section 203(m) was either "confusing" or "misleading" with respect to the ownership of tips.  76 Fed. Reg. at 18840–41.  The DOL also considered our reading of section 203(m) in *Cumbie* and concluded that, as written, 203(m) contained a "loophole" that allowed employers to exploit the FLSA tipping provisions. *Id*. at 18841.  It was certainly reasonable to conclude that clarification by the DOL was needed.  The DOL's clarification—the 2011 rule—was a reasonable response to these comments and relevant case law.

The legislative history of the FLSA supports the DOL's interpretation of section 203(m) of the FLSA.  An

"authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which represent the considered and collective understanding of those Congressmen [and women] involved in drafting and studying proposed legislation." *Garcia v. United States*, 469 U.S. 70, 76 (1984) (citation and internal quotation marks omitted). On February 21, 1974, the Senate Committee published its views on the 1974 amendments to section 203(m). S. Rep. No. 93-690 (1974).

Employer-Appellees argue that the report reveals an intent contrary to the DOL's interpretation because the report states that an "employer will lose the benefit of [the tip credit] exception if tipped employees are required to share their tips with employees who do not customarily and regularly receive tips[.]" In other words, Appellees contend that Congress viewed the ability to take a tip credit as a benefit that came with conditions and should an employer fail to meet these conditions, such employer would be ineligible to reap the benefits of taking a tip credit. While this is a fair interpretation of the statute, it is a leap too far to conclude that Congress clearly intended to deprive the DOL the ability to later apply similar conditions on employers who do not take a tip credit.

Moreover, the surrounding text in the Senate Committee report supports the DOL's reading of section 203(m). The Committee reported that the 1974 amendment "modifies section [20]3(m) of the Fair Labor Standards Act by requiring . . . that all tips received be paid out to tipped employees." S. Rep. No. 93-690, at 42. This language supports the DOL's statutory construction that "[t]ips are the property of the employee whether or not the employer has taken a tip credit." 29 C.F.R. § 531.52. In the same report, the Committee wrote

that "tipped employee[s] should have stronger protection," and reiterated that a "tip is . . . distinguished from payment of a charge . . . [and the customer] has the right to determine who shall be the recipient of the gratuity." S. Rep. No. 93-690, at 42.

In 1977, the Committee again reported that "[t]ips are not wages, and under the 1974 amendments tips must be retained by the employees . . . and cannot be paid to the employer *or* otherwise used by the employer to offset his wage obligation, except to the extent permitted by section [20]3(m)." S. Rep. No. 95-440 at 368 (1977) (emphasis added). The use of the word "or" supports the DOL's interpretation of the FLSA because it implies that the only acceptable use by an employer of employee tips is a tip credit.

Additionally, we find that the purpose of the FLSA does not support the view that Congress clearly intended to permanently allow employers that do not take a tip credit to do whatever they wish with their employees' tips. The district courts' reading that the FLSA provides "specific statutory protections" related only to "substandard wages and oppressive working hours" is too narrow. As previously noted, the FLSA is a broad and remedial act that Congress has frequently expanded and extended.

Considering the statements in the relevant legislative history and the purpose and structure of the FLSA, we find that the DOL's interpretation is more closely aligned with Congressional intent, and at the very least, that the DOL's interpretation is reasonable.

## Conclusion

To be clear, we have no quarrel with *Cumbie v. Woody Woo Inc.*, 596 F.3d 577 (9th Cir. 2010). Our conclusion with respect to *Cumbie* is only that its holding was grounded in statutory silence. Following *Christensen v. Harris Cty.*, 529 U.S. 576 (2000), we find that *Cumbie* does not foreclose the DOL's ability to regulate tip pooling practices of employers who do not take a tip credit.

Applying *Chevron*, we conclude that Congress has not addressed the question at issue because section 203(m) is silent as to the tip pooling practices of employers who do not take a tip credit. There is no convincing evidence that Congress's silence, in this context, means anything other than a refusal to tie the agency's hands. In exercising its discretion to regulate, the DOL promulgated a rule that is consistent with the FLSA's language, legislative history, and purpose.

Therefore, having decided that the regulation withstands *Chevron* review, we reverse both judgments and remand for proceedings consistent with this opinion.

**REVERSED and REMANDED.**

N.R. SMITH, Circuit Judge, dissenting:

Colleagues, even if you don't like circuit precedent, you must follow it. Afterwards, you call the case en banc. You cannot create your own contrary precedent.[1]

This case is nothing more than *Cumbie II*. Because the majority ignores our precedent in *Cumbie v. Woody Woo, Inc.* ("*Cumbie*"), 596 F.3d 577 (9th Cir. 2010), I begin by describing it in some detail. I will then compare *Cumbie* to this case.

In *Cumbie*, a waitress working at an Oregon restaurant sued the restaurant, alleging that its tip-pooling arrangement violated 29 U.S.C. § 203(m). *Id.* at 579.

> [The restaurant] paid its servers a cash wage at or exceeding Oregon's minimum wage, which at the time was $2.10 more than the federal minimum wage. In addition to this cash wage, the servers received a portion of their daily tips. [The restaurant] required its servers to contribute their tips to a "tip pool" that was redistributed to all restaurant employees. The largest portion of the tip pool (between 55% and 70%) went to kitchen staff (*e.g.*, dishwashers and cooks), who are not

---

[1] As a three-judge panel of this circuit, we are bound by prior panel opinions and can only reexamine them when "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). Here, our circuit precedent is clear and there has been no intervening higher authority. Therefore, we are bound to follow precedent.

> customarily tipped in the restaurant industry.
> The remainder (between 30% and 45%) was
> returned to the servers in proportion to their
> hours worked.

*Id*. at 578–79 (footnotes omitted). The district court dismissed the waitress's complaint for failure to state a claim, and she timely appealed. *Id*. at 579.

On appeal, the waitress argued the restaurant's tip-pooling arrangement was invalid, because it included employees who were not "customarily and regularly tipped employees" under section 203(m). *Id*. The restaurant argued that this interpretation of section 203(m) was correct only "vis-à-vis employers who take a 'tip credit' toward their minimum-wage obligation," and that, because the restaurant had not taken a tip credit, it had not violated section 203(m). *Id*.

We affirmed the district court, relying on the precedent established by the Supreme Court in *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386 (1942). *Cumbie*, 596 F.3d at 579. In *Williams*, the Supreme Court held that "[i]n businesses where tipping is customary, the tips, in the absence of an explicit contrary understanding, belong to the recipient. Where, however, [such] an arrangement is made . . . , in the absence of statutory interference, no reason is perceived for its invalidity." *Williams*, 315 U.S. at 397 (internal citations omitted). Thus, "*Williams* establish[ed] the default rule that an arrangement to turn over or to redistribute tips is presumptively valid." *Cumbie*, 596 F.3d at 579.

We also held, as a matter of first impression, that section 203(m) did not interfere with the default rule articulated in *Williams. Id*. at 580–81. Employers (who do not take a tip

credit) remain free to contract with their tipped employees to redistribute tips among all employees, including those who are not customarily tipped. *Cumbie*, 596 F.3d at 579–81. We reasoned that section 203(m) did not impose statutory interference, because the plain text of section 203(m) had only imposed a *condition* on employers who take a tip credit, rather than a blanket *requirement* on all employers regardless of whether they take a tip credit. *Cumbie*, 596 F.3d at 581. As we concluded, "[a] statute that provides that a person must do *X in order to achieve Y* does not mandate that a person must do *X,* period." *Id*. We continued:

> If Congress wanted to articulate a general principle that tips are the property of the employee [when the employer does not take a tip credit], it could have done so without reference to the tip credit. "It is our duty to give effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (internal quotation marks omitted). Therefore, we decline to read [section 203(m)] in such a way as to render its reference to the tip credit, as well as its conditional language and structure, superfluous.

*Id*. Because the restaurant in *Cumbie* did not take a tip credit, there was no basis for concluding that the restaurant's tip-pooling arrangement violated section 203(m). *Id*.

Lastly, we addressed the waitress's argument that the restaurant was functionally taking a tip credit by using a tip-pooling arrangement to subsidize the wages of its non-tipped

employees. *Id*. at 582. We said, even if this were the case, this "de facto" tip credit was not "so absurd or glaringly unjust as to warrant a departure from the plain language of the statute." *Id.* (quoting *Ingals Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs*, 519 U.S. 248, 261 (1997)). We recognized that "[t]he purpose of the [Fair Labor Standards Act ("FLSA")] is to protect workers from 'substandard wages and oppressive working hours,'" and concluded that the restaurant's tip-pooling arrangement did not thwart that purpose. *Id*. (quoting *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). Thus, because "[t]he Supreme Court has made it clear that an employment practice does not violate the FLSA unless the FLSA *prohibits* it," we rejected the waitress's argument and concluded that the FLSA does not restrict employee tip-pooling arrangements when the employer does not take a tip credit. *Id*. at 583.

We now decide a case identical to *Cumbie*. Once again, an Oregon restaurant (named aptly enough "Oregon Restaurant") is defending its practice of pooling the tips of its tipped employees and redistributing those tips among all of its employees, including those who are not customarily tipped. Exactly like *Cumbie*, the restaurant is paying all of its employees above minimum wage and has not taken a tip credit. Again, its tipped employees are challenging that practice—not under a new theory, but under the same theory advanced in *Cumbie*. Again, they argue that section 203(m) prohibits the redistribution of tips.[2] Because we are obligated

---

[2] Technically, rather than waiting to be sued by its tipped employees, Oregon Restaurant is instead suing the Department of Labor in response to its newly promulgated rule reinterpreting section 203(m). Nonetheless, in *Cesarz v. Wynn Las Vegas* (the other case in this appeal), involving a casino instead of a restaurant, the tipped casino dealers are indeed suing

to follow precedent, this case should have ended with a memorandum disposition.

Instead, the majority ignores our circuit precedent and pretends this case is different, because this time the Department of Labor ("DOL") has promulgated a new rule interpreting section 203(m) differently than we interpreted it in *Cumbie*. However, the DOL's promulgation of this new rule changes nothing. As the majority notes, if Congress's intent behind a statute is clear, that is the end of our inquiry. We need not defer to an agency's interpretation of this statute. Maj. Op. at 13–14; *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

No one disputes that the courts can determine whether a statute is clear. In fact, the Supreme Court has held that a prior judicial construction of a statute "trumps an agency construction otherwise entitled to *Chevron* deference" when "the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.* ("*Brand X*"), 545 U.S. 967, 982 (2005). The majority wants to dodge the *Brand X* bullet by saying *Cumbie* did not determine that the meaning of section 203(m) is clear and unambiguous, but instead only determined that "nothing in the text purports to restrict" the practice of redistributing tips, thereby leaving room for agency interpretation. Maj. Op. at 15, 18–19 (quoting *Cumbie*, 596 F.3d at 583). This interpretation of *Cumbie* has no merit. Any rational reading of *Cumbie* unequivocally

the casino just as the waitress in *Cumbie* sued the restaurant. Thus, the facts and procedural posture in both cases remain functionally identical to those in *Cumbie.*

demonstrates that we determined the meaning of section 203(m) is clear and unambiguous, leaving no room for agency interpretation. We explicitly concluded that section 203(m) is "clear" or "plain" multiple times—not only in the footnotes to the opinion, but also in the text of the opinion itself. *Cumbie*, 596 F.3d at 579 n.6, 580–81, 581 n.11. Moreover, because the language of the statute was clear and unambiguous, we expressly concluded there was no need to refer to the legislative history. *Id*. at 581 n.11. If there were any remaining question concerning the plain language of the statute, we clearly stated that any alternate reading would render its language and structure superfluous. *Id*. at 581. Indeed, there has not been penned a stronger application of the *Brand X* standard than the majority encounters in *Cumbie*. If *Cumbie* did anything at all, it held that the meaning of section 203(m) was clear an§d unambiguous.[3]

The majority next tries to dodge *Cumbie* by suggesting section 203(m) is silent as to whether the DOL can regulate tip pooling arrangements of employers who do *not* take a tip credit. *Cumbie* addressed this "statutory silence" argument squarely: according to the plain text of the statute, section 203(m) only applies to employers who *do* take a tip credit (because they are not paying the minimum wage), and therefore does not apply to employers who *do not* take a tip credit. Nowhere in its text, either explicitly or implicitly, does section 203(m) impose a blanket tipping requirement on all

---

[3] The majority counters that "[w]hat was 'clear' in *Cumbie* was that the FLSA's tip credit provision did not impose any 'statutory interference' that would invalidate tip pooling when no tip credit is taken." Maj. Op. at 18–19, n.4. Read *Cumbie*; the majority is wrong. Instead, we explicitly held in *Cumbie* that section 203(m) does not apply to employers who do not take a tip credit, and that any alternate reading would render its language and structure superfluous. *Cumbie*, 596 F.3d at 581.

employers. We explained, "[a] statute that provides that a person must do *X in order to achieve Y* does not mandate that a person must do *X*, period." *Cumbie*, 596 F.3d at 581. There is no contrived ambiguity to address in section 203(m). Contrary to the majority opinion, *Christensen* has no validity here. Maj. Op. at 15; *see Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000).**[4]**

Even if *Christensen* were relevant, the majority's interpretation of *Christensen* turns *Chevron* on its head. Instead of requiring that administrative rulemaking be rooted in a congressional delegation of authority, the majority claims that, where a statute is "silent," administrative regulation is not prohibited. In other words, the majority suggests an agency may regulate wherever that statute does not forbid it to regulate. This suggestion has no validity. The Supreme Court has made clear that it is only in the ambiguous "interstices" *within* the statute where silence warrants administrative interpretation, not the vast void of silence on either side of it. *Util. Air Regulatory Grp. v. E.P.A.*, 134 S. Ct. 2427, 2445 (2014) ("Agencies exercise discretion only in the interstices created by statutory silence or ambiguity

---

**[4]** The majority states "the dissent overlook[s] the part of *Christensen* that discussed *Chevron* deference and Judge Souter's concurrence." Maj. Op. at 17.

Again, the majority is wrong. In *Christensen*, the Supreme Court allowed the DOL to enact further regulation over compensatory time, because the DOL had been given the express authority to do so. *Christensen*, 529 U.S. at 580–81. However, under section 203(m), the DOL has only been given authority to regulate the tips of employers who take a tip credit. The DOL has not been given authority to regulate the tips of employers who pay their employees a minimum wage and do not take a tip credit. Therefore, unlike *Christensen*, there was no statutory silence permitting the DOL further regulation of this issue.

. . . ."). If it were otherwise, within each statute granting administrative authority, Congress would need to erect walls, making it clear that the agency is limited to regulating only that which the statute expressly addresses, or implies *within* those parameters. As the district court below correctly noted, "[t]o express its intention that certain activities be left free from regulation, Congress need not lace the United States Code with the phrase, 'You shall not pass!'" *Oregon Rest. & Lodging v. Solis*, 948 F.Supp. 2d 1217, 1225–26 (D. Oreg. 2013). Thus, because section 203(m) is "silent" to regulation over employers who do not take a tip credit, any such regulation falls outside of the scope of the statute and the DOL has no power to regulate there. *See City of Arlington v. F.C.C.*, 133 S. Ct. 1863, 1868 (2013) ("No matter how it is framed, the question a court faces when confronted with an agency's interpretation of a statute it administers is always, simply, *whether the agency has stayed within the bounds of its statutory authority*.").

It is curious why the majority seizes on the DOL's newly promulgated rule as the basis for its decision. The argument the DOL makes now was the same argument made in *Cumbie*.[5] However in *Cumbie*, the waitress ultimately "recogniz[ed] that section 203(m) [was] of no assistance" in prohibiting employers (who do not take a tip credit) from pooling their employees' tips and "disavowed reliance on it in her reply brief and at oral argument" in favor of an alternative, albeit equally meritless argument. *Cumbie*, 596 F.3d at 581. Now, after losing in *Cumbie*, the DOL has decided to go through the backdoor by promulgating a new

---

[5] The DOL supported the waitress's appeal in *Cumbie* by filing an amicus brief.

rule codifying its argument in *Cumbie* and its preferred interpretation of section 203(m).

*Chevron* deference does not work that way. The DOL is not a legislative body unto itself, but instead must carry out Congress's intent. *Chevron*, 467 U.S. at 842–43. To the extent Congress's intent is unclear with regard to a particular statute, the DOL may engage in statutory interpretation and issue rules. *Id*. But that circumstance is not presented here. Instead, we explicitly and unequivocally found section 203(m) clear and unambiguous. Congress's intent was clear on this matter. Regardless of how much the DOL dislikes the interpretation, it must follow it. *See Brand X*, 545 U.S. at 982. The DOL is not free to manufacture an ambiguity, which circuit precedent mandates is not there.

## CONCLUSION

There are two cases before us. In the first case, the Oregon Restaurant and Lodging Association sued the DOL, challenging the validity of its newly promulgated rule and seeking to enjoin its enforcement. In the second case, a group of casino dealers sued their employer, Wynn Las Vegas, LLC, challenging its tip pooling practice as a violation of the DOL's new rule. In both of these cases, the employer paid its employees above minimum wage and did not take a tip credit. In both cases, the district court ruled in favor of the employer, relying in large measure on our decision in *Cumbie*.

Our course is clear in both cases. *Williams* is still good law; the Supreme Court has done nothing to overturn or alter it. *See Williams*, 315 U.S. at 397. Thus, the rule remains that tips belong to the tipped employee unless otherwise agreed between the employee and the employer. Here, such

agreements existed between the employers and their respective employees. These tip redistribution agreements are presumptively valid and compliant with our circuit's law. Thus, in each case, we ought to be affirming the district court. To do otherwise is to ignore circuit precedent and disregard stare decisis, as the majority does here.

I respectfully dissent.