**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALEC MARSH,
              *Plaintiff-Appellant*,

              v.

J. ALEXANDER'S LLC,
              *Defendant-Appellee.*

No. 15-15791

D.C. No.
2:14-cv-01038-SMM

CRYSTAL SHEEHAN,
              *Plaintiff-Appellant*,

              v.

ROMULUS INCORPORATED,
DBA International House of
Pancakes,
              *Defendant-Appellee.*

No. 15-15794

D.C. No.
2:14-cv-00464-SMM

SILVIA ALARCON,
                  *Plaintiff-Appellant*,

          v.

ARRIBA ENTERPRISES
INCORPORATED, DBA Arriba
Mexican Grill,
                  *Defendant-Appellee.*

No. 15-16561

D.C. No.
2:14-cv-00465-SMM

SAROSHA HOGAN; NICHOLAS
JACKSON; SKYLAR VAZQUEZ;
THOMAS ARMSTRONG; PHILIP
TODD; MARIA HURKMANS,
                  *Plaintiffs-Appellants*,

          v.

AMERICAN MULTI-CINEMA,
INC., DBA AMC Theatres
Esplanade 14,
                  *Defendant-Appellee.*

No. 15-16659

D.C. Nos.
2:14-cv-00051-SMM
2:14-cv-00766-SMM
2:14-cv-00768-SMM
2:14-cv-00769-SMM
2:14-cv-01243-SMM
2:14-cv-01244-SMM

| | |
|---|---|
| NATHAN LLANOS, an individual,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>P.F. CHANG'S CHINA BISTRO,<br>INC.,<br>*Defendant-Appellee.* | No. 16-15003<br><br>D.C. No.<br>2:14-cv-00261-SMM |

| | |
|---|---|
| KRISTEN ROMERO, an<br>individual,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>P.F. CHANG'S CHINA BISTRO,<br>INC.,<br>*Defendant-Appellee.* | No. 16-15004<br><br>D.C. No.<br>2:14-cv-00262-SMM |

| | |
|---|---|
| ANDREW FIELDS, an individual,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>P.F. CHANG'S CHINA BISTRO,<br>INC.,<br>*Defendant-Appellee.* | No. 16-15005<br><br>D.C. No.<br>2:14-cv-00263-SMM |

ALTO WILLIAMS,
        *Plaintiff-Appellant*,

        v.

AMERICAN BLUE RIBBONS
HOLDINGS LLC,
        *Defendant-Appellee.*

No. 16-15118

D.C. No.
2:14-cv-01467-SMM

STEPHANIE R. FAUSNACHT,
        *Plaintiff-Appellant*,

        v.

LION'S DEN MANAGEMENT,
LLC, DBA Denny's,
        *Defendant-Appellee.*

No. 16-16033

D.C. No.
2:15-cv-01561-SMM

OPINION

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, Senior District Judge, Presiding

Argued and Submitted April 20, 2017
San Francisco, California

Filed September 6, 2017

Before: Richard A. Paez and Sandra S. Ikuta, Circuit Judges, and David A. Faber,[*] District Judge.

Opinion by Judge Ikuta;
Partial Concurrence and Partial Dissent by Judge Paez

---

## SUMMARY[**]

---

### Labor Law

The panel vacated the district court's final orders and judgments in favor of the defendants in actions brought under the Fair Labor Standards Act by former servers and bartenders who alleged that their employers improperly claimed their tips as a credit toward the required minimum wage.

Disagreeing with the Eighth Circuit, the panel held that the Department of Labor's interpretation, in its Field Operations Handbook, of 29 C.F.R. § 531.56(e), a regulation addressing application of the FLSA's tip credit provision to the situation in which an employee works for an employer in two different jobs, did not merit controlling deference because the DOL's interpretation was inconsistent with the dual jobs regulation and attempted to create de facto a new regulation. The panel held that no provision with the force of

---

[*] The Honorable David A. Faber, United States District Judge for the Southern District of West Virginia, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

law permitted the DOL to require employers to engage in time tracking and accounting for minutes spent in diverse tasks before claiming a tip credit.

The panel held that the plaintiffs could not state a claim by alleging that discrete "related" tasks or duties, which were performed intermittently over the course of the day and were intermingled with their duties directed at generating tips, comprised a dual job when aggregated together over the course of a workweek. The plaintiffs also could not state a claim by alleging the performance of "unrelated" duties that were similarly dispersed and generally assigned.

The panel vacated the district court's final orders and judgments and remanded to allow the plaintiffs an opportunity to propose new amended complaints in light of the panel's opinion.

Concurring and dissenting, Judge Paez wrote that he would follow the Eighth Circuit and defer to the DOL's interpretation of the regulation, 29 C.F.R. § 531.56(e). Judge Paez wrote that the DOL's guidance was entitled to deference because it interpreted the DOL's own ambiguous regulation and was neither plainly inconsistent with that regulation nor erroneous. Judge Paez would vacate and remand for further proceedings on whether the defendants violated the FLSA by paying their employees well below minimum wage for untipped work.

**COUNSEL**

Jahan C. Sagafi (argued), Outten & Golden LLP, San Francisco, California; Clifford P. Bendau II, The Bendau Law

Firm, Phoenix, Arizona; Jamie G. Sypulski, Law Office of Jamie Golden Sypulski, Chicago, Illinois; Douglas M. Werman, Werman Salas P.C., Chicago, Illinois; for Plaintiffs-Appellants.

Paul DeCamp (argued), Jackson Lewis P.C., Reston, Virginia; Stephanie M. Cerasano, Jackson Lewis P.C., Phoenix, Arizona; for Defendant-Appellee P.F. Chang's China Bistro.

David A. Selden (argued), Julie A. Pace, and Heidi Nunn-Gilman, The Cavanagh Law Firm, Phoenix, Arizona, for Defendant-Appellee Romulus, Inc.

Robert W. Horton and Mary Leigh Pirtle, Bass Berry & Sims PLC, Nashville, Tennessee; Eric M. Fraser, Osborn Maledon P.A., Phoenix, Arizona; for Defendant-Appellee J. Alexander's LLC.

Karen L. Karr, Clark Hill PLC, Scottsdale, Arizona, for Defendants-Appellees Arriba Enterprises Inc. and Lion's Den Management LLC.

Tracy A. Miller, Ogletree Deakins Nash Smoak & Stewart P.C., Phoenix, Arizona, for Defendant-Appellant American Multi-Cinema Inc.

Caroline Larsen and Alexandra J. Gill, Ogletree Deakins Nash Smoak & Stewart P.C., Phoenix, Arizona, for Defendant-Appellee American Blue Ribbon Holdings LLC.

Sarah K. Marcus (argued), Senior Attorney; Paul L. Frieden, Counsel for Appellate Litigation; Jennifer S. Brand, Associate Solicitor; M. Patricia Smith, Solicitor of Labor;

Office of the Solicitor, United States Department of Labor, Washington, D.C., for Amicus Curiae Secretary of Labor.

**OPINION**

IKUTA, Circuit Judge:

The Fair Labor Standards Act of 1938 (FLSA) generally requires employers to pay a cash wage of $7.25 per hour to their employees. 29 U.S.C. § 206(a)(1)(c). But where an "employee engage[s] in an occupation in which he customarily and regularly receives more than $30 a month in tips," *id.* § 203(t), his employer may pay a reduced cash wage and claim the employee's tips as a credit towards the $7.25 per hour minimum, *id.* § 203(m). The plaintiffs in these consolidated appeals are former servers and bartenders who allege that their employers improperly claimed this credit, thereby failing to pay the required minimum wage. In support of their theory of the case, the employees rely on a regulation, 29 C.F.R. § 531.56(e), as most recently interpreted by the Department of Labor (DOL).[1] *See* Department of Labor Wage and Hour Division, Field Operations Handbook § 30d00(f) (2016). The district court held that the DOL's interpretation of the regulation is not entitled to deference and concluded that the employees failed to state claims for minimum wage violations. We largely agree with the district court's analysis of the deference question, but we vacate and remand to allow the plaintiffs an opportunity to propose amended pleadings in light of our holding.

---

[1] We use "DOL" to refer both to the Department generally and to the Secretary of Labor specifically.

I

From November 2012 through April 2013, Alec Marsh worked as a server for J. Alexander's, a restaurant in Phoenix, Arizona.**[2]** In May 2014, he filed a one-count complaint alleging that J. Alexander's violated the FLSA's minimum wage provision by failing to pay him an appropriate wage. *See* 29 U.S.C. § 206(a)(1)(c).

To understand Marsh's legal theory, one must first understand the FLSA's scheme for guaranteeing a minimum wage to employees, like Marsh, who routinely earn tips.

---

**[2]** Because the specific circumstances of the plaintiffs' workweeks are materially identical, we recount in detail only the facts pertaining to the plaintiff in the lead case, Alec Marsh, and we refer to the plaintiffs collectively as "Marsh." The additional plaintiffs are Crystal Sheehan (No. 15-15794); Silvia Alarcon (No. 15-16561); Sarosha Hogan, Nicholas Jackson, Skylar Vazquez, Thomas Armstrong, Philip Todd, and Maria Hurkmans (No. 15-16659); Nathan Llanos (No. 16-5003); Kristen Romero (No. 16-15004); Andrew Fields (No. 16-15005); Alto Williams (No. 16-15118); and Stephanie Fausnacht (No. 16-16033). We refer to the defendants collectively as "J. Alexander's." The additional defendant establishments are International House of Pancakes (No. 15-15794); Arriba Mexican Grill (No. 15-16561); AMC Theatres Esplanade 14 (No. 15-16659); P.F. Chang's China Bistro (Nos. 16-15003/04/05); American Blue Ribbon Holdings LLC (No. 16-15118); and Denny's (No. 16-16033).

Six of these appeals arise from orders granting motions to dismiss, two appeals are from judgments on the pleadings, and the final appeal comes from an order granting summary judgment. For the complaints that the district court dismissed pursuant to Rule 12(b)(6) or as to which the district court granted judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, we assume the truth of "well-pleaded, nonconclusory factual allegation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). For the appeal from summary judgment, we view the facts in the light most favorable to the non-moving party, which here is the plaintiff. *Nolan v. Heald Coll.*, 551 F.3d 1148, 1154 (9th Cir. 2009).

Although all employers must pay their employees a minimum wage of at least $7.25 per hour, *id*., the FLSA creates a special rule for how an employer can compensate a "[t]ipped employee," which is defined as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips," *id.* § 203(t). The applicable statute provides:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to–
>
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee.

*Id.* § 203(m).**[3]**  The practical effect of this provision is that an employer must pay a tipped employee a cash wage of $2.13, and can make up the difference between $2.13 and the federal minimum wage by taking a credit for the employee's tips (known as a "tip credit").**[4]**  *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 580 (9th Cir. 2010).  If the $2.13 cash wage plus the tips the employee actually received are insufficient to meet the $7.25 per hour minimum wage, then the employer must increase the cash wage to meet the minimum wage requirement.  *Id.*  As a result, tipped employees always earn at least the federal minimum wage.

The FLSA's tip credit provision, 29 U.S.C. § 203(m), is not the only pertinent part of this regulatory regime.  Through regulations interpreting § 203(t), the DOL has addressed the application of the tip credit provision to the situation in which an employee works for an employer in two different jobs.  This "dual jobs" regulation provides:

> Dual jobs.  In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a

---

**[3]** Additional language in § 203(m) that is not relevant here (1) permits employers to include as wages certain costs for facilities furnished to employees in some circumstances and (2) imposes certain obligations on employers claiming the tip credit.  *See Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 580 & n.8 (9th Cir. 2010).

**[4]** At all relevant times, Arizona's minimum wage law was more stringent than the FLSA and set the maximum tip credit that an employer could claim at $3.00, which is less than the $5.12 allowed under federal law.  *See* Ariz. Rev. Stat. § 23-363(C) (as added by Proposition 202 in 2006).  This distinction between state and federal law is immaterial for purposes of these cases.

waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter.  He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man.   Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses.  It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group.   Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e).

The dual jobs regulation is also not the regime's end; the DOL has promulgated internal agency guidance that places a specific interpretive gloss on the regulation.  The DOL's most recent interpretation, which the DOL made public in 2016, is set out in its Wage and Hour Division's Field Operations Handbook (FOH).  The FOH states:

(1) When an individual is employed in a tipped occupation and a non-tipped occupation, for example, as a server and janitor (dual jobs), the tip credit is available

only for the hours spent in the tipped occupation, provided such employee customarily and regularly receives more than $30.00 a month in tips. *See* 29 CFR 531.56(e).

(2) 29 CFR 531.56(e) permits the employer to take a tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties are not by themselves directed toward producing tips, provided such related duties are incidental to the regular duties of the tipped employee and are generally assigned to the tipped employee. For example, duties related to the tipped occupation may include a server who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee, and occasionally washes dishes or glasses.

(3) However, where the facts indicate that tipped employees spend a substantial amount of time (*i.e.*, in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance.

(4) Likewise, an employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the

tipped occupation. For example, maintenance work (*e.g.*, cleaning bathrooms and washing windows) are not related to the tipped occupation of a server; such jobs are non-tipped occupations. In this case, the employee is effectively employed in dual jobs.

FOH § 30d00(f) (2016).[5]

Marsh alleges that as a J. Alexander's employee, he "customarily and regularly" received more than $30 a month in tips.[6] As part of his job as a server, Marsh had a range of duties in addition to serving customers. For instance, Marsh brewed tea during every opening shift and as needed, which took about ten minutes to complete each time, for a total of forty minutes over the course of any given workweek. He also brewed coffee for each customer who ordered it, which took about five minutes to complete each time, and added up to approximately eighty minutes of any given workweek. Marsh also cut, arranged, and stocked lemons and limes during every opening shift and throughout his shifts, each session taking approximately five minutes, for a total of forty minutes in any given workweek. Marsh cleaned the soft

---

[5] According to DOL's amicus brief in this case, the FOH § 30d00(f) is its current official interpretation of the dual jobs regulation. This guidance is currently available in Chapter 30 of the FOH posted on the DOL's website, www.dol.gov/whd/foh/foh_ch30.pdf. Marsh's complaint relies on an interpretation of the dual jobs regulation that is consistent with DOL's current interpretation. Therefore, we refer to FOH § 30d00(f) when analyzing the merits of Marsh's claim.

[6] We rely on Marsh's proffered amendments and proposed amended complaint as the source of the facts recited here because these allegations provide more detail.

drink dispensers and their nozzles, replaced soft drink syrups, and stocked ice. Each task took about five minutes to complete, and over the course of a workweek these tasks respectively took twenty, ten, and forty minutes. J. Alexander's also assigned Marsh cleaning duties, such as wiping tables (five to twenty minutes each time, for a total of one hour and forty minutes over the course of a week), taking out trash (ten minutes each time, for a total of twenty minutes over the course of a week), scrubbing walls when the restaurant was slow (one hour over the course of the week), sweeping floors (about ten minutes each time, for a total of forty minutes over the course of a week), and cleaning restrooms (ten minutes each time, for a total of thirty minutes over the course of a week).[7]

J. Alexander's took a tip credit for the entire time Marsh spent at work, including the time he spent on duties that were not directly connected with generating tips. Because these "related duties" took up more than 20 percent of Marsh's working hours, Marsh's first complaint relied on the DOL's interpretation of the dual jobs regulation, 29 C.F.R. § 531.56(e), to allege that J. Alexander's improperly took a tip credit for the time Marsh spent on the "related duties" described in his complaint.

---

[7] Although Marsh alleges in his proposed amended complaint that some of these duties were performed before and after his shifts, and therefore not related to customer interaction, Marsh conceded at oral argument that all of his duties were intermingled throughout the time he spent working. *See* Oral Argument at 40:45–42:06, *Marsh v. J. Alexander's*, — F.3d — (9th Cir. 2017) (No. 15-15791+), available at http://www.ca9.uscourts.gov/media/view_video.php? pk_vid=0000011413.

Marsh's complaint was one of several filed in the district court alleging the same theory of FLSA liability, so the cases were consolidated before a single judge. A few months after consolidation, Marsh moved for leave to file a proposed amended complaint alleging in a second count that the cleaning duties described in his complaint were "unrelated" to his occupation and that J. Alexander's was categorically not allowed to take a tip credit for any of the time spent on those duties. Therefore, consistent with the FOH § 30d00(f), Marsh alleged that he should have been paid a cash wage of $7.25 per hour for his time spent on the related and unrelated duties that were not directed towards generating tips. Because J. Alexander's had paid Marsh a cash wage of less than $7.25 per hour for the time spent on those duties, Marsh argued that he was entitled to compensation for the difference between the full minimum wage and the cash wage he was paid for the time spent on tasks that did not generate tips.

J. Alexander's opposed Marsh's motion to amend the complaint and moved to dismiss the original complaint. The district court ruled on the motions in March 2015 and made two key holdings. Most important, the district court held that Marsh's complaint did not allege that he was working dual jobs, as defined in the dual jobs regulation. It rejected Marsh's reliance on the DOL's interpretation of the regulation because the regulation was unambiguous, and the DOL's interpretations of the regulation did not merit deference. Alternatively, the district court also held that "no minimum wage violation occurs so long as the employer's total wage paid to an employee in any given workweek divided by the total hours worked in the workweek equal or exceeds the minimum wage rate." Because the complaint failed to allege that Marsh's average hourly wage (including tips) across any given workweek was below the federal

minimum wage, Marsh failed to state a claim.  Given this reasoning, the district court granted J. Alexander's motion to dismiss and denied as futile Marsh's motion for leave to amend.

This timely appeal followed.[8]  We have jurisdiction under 28 U.S.C. § 1291.  We review each final order in these appeals and the questions of statutory and regulatory interpretation de novo.  *See Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 389 (9th Cir. 2011), *aff'd*, 567 U.S. 142 (2012); *Nolan v. Heald Coll.*, 551 F.3d 1148, 1153 (9th Cir. 2009) (summary judgment); *Honey v. Distelrath*, 195 F.3d 531, 533 (9th Cir. 1999) (judgment on the pleadings); *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995) (motion to dismiss).

## II

To resolve this appeal, we must determine whether we owe deference to the DOL's interpretation of the dual jobs regulation, 29 C.F.R. § 531.56(e), and whether that regulation supports Marsh's theory of J. Alexander's liability.

## A

We first consider our framework for examining agency interpretations of statutes and regulations.  If a statute is clear, then we "give effect to the unambiguously expressed intent of Congress."  *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).  But if a statute is silent or ambiguous as to the question at issue, the agency

---

[8] The other cases in this consolidated appeal followed similar paths to this court.

charged with administering the statute may resolve the ambiguity or fill the statutory gap through regulations, "which are entitled to deference if they resolve the ambiguity in a reasonable manner." *Coeur Alaska, Inc. v. Se. Alaska Conservation Council*, 557 U.S. 261, 277–78 (2009).

If the regulation itself is ambiguous, we consider the agency's interpretation of the regulation, even if the "interpretation comes to us in the form of a legal brief." *Auer v. Robbins*, 519 U.S. 452, 462 (1997); *see also Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 208 (2011). While we generally defer to an agency's interpretations of its own ambiguous regulations, we do not do so when the interpretation is "plainly erroneous or inconsistent with the regulation," *Auer*, 519 U.S. at 461 (internal quotation marks omitted), or when such deference would impermissibly "permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation," *Christensen v. Harris County*, 529 U.S. 576, 588 (2000).[9] Further, we must always ensure that the interpretation is not inconsistent with a congressional directive; "[a] court need not accept an agency's interpretation of its own regulations if that

---

[9] The dissent errs in stating that we may "decline to apply *Auer* deference *only* where the agency's interpretation is 'plainly erroneous or inconsistent' with the regulation." Dissent at 42 (emphasis in original). We may also withhold *Auer* deference when an agency's interpretation is inconsistent with its prior pronouncements or results in an unfair surprise to regulated parties. *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155–56 (2012). The district court held that no deference was owed to the DOL because of its inconsistent interpretation of the dual jobs regulation over time, and J. Alexander's contends that we may withhold deference from the DOL's interpretation due to both inconsistency and unfair surprise. Because we resolve the deference question on different grounds, we do not reach these arguments.

interpretation is . . . inconsistent with the statute under which the regulations were promulgated." *Mines v. Sullivan*, 981 F.2d 1068, 1070 (9th Cir. 1992) (citing *United States v. Larionoff*, 431 U.S. 864, 872–73 (1977)); *see also Cumbie*, 596 F.3d at 582 & n.13 (declining to give *Auer* deference to a DOL regulatory interpretation that was inconsistent with the FLSA and the regulation's text).

"[W]hen *Auer* deference is not warranted, an agency's interpretation of an ambiguous regulation should be evaluated under the principle laid down in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)." *Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1035 (9th Cir. 2013). Under this standard, we accord the agency's interpretation "a measure of deference proportional to the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Id.* at 1036 (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159 (2012) (internal quotation marks omitted)).

### B

We now turn to the question whether the DOL's interpretation of the dual jobs regulation is consistent with the regulation and statute. To answer this question, we consider the statute, the regulation, and the DOL's interpretations in their historical contexts.

As originally enacted in 1938, the FLSA did not expressly address the effect of an employee's tips on the amount of wages paid by the employer. In 1966, however, Congress amended the FLSA to extend its coverage to workers

employed in the hotel and restaurant industries. *Or. Rest. & Lodging Ass'n v. Perez*, 816 F.3d 1080, 1083 (9th Cir. 2016). Because the 1966 amendments brought many traditionally tipped employees within the FLSA's protection, Congress was careful to design the amendments "to permit the continuance of existing practices with respect to tips." S. Rep. No. 89-1487 (1966), *as reprinted in* 1966 U.S.C.C.A.N. 3002, 3014. Among other changes, the 1966 amendments added § 203(m) and § 203(t), which respectively allowed an employer to take a credit against the minimum wage for employees who were already compensated by tips and provided a definition of "tipped employee" as meaning "any employee engaged in an occupation in which he customarily and regularly receives" the requisite amount of tips.[10] *See* Fair Labor Standards Amendments of 1966, Pub. L. No. 89-601, § 101, 80 Stat. 830, 830.

The 1966 amendments also authorized the DOL "to promulgate necessary rules, regulations, or orders with regard to the amendments made." *Id*. § 602, 80 Stat. at 844. Pursuant to this grant of authority, the DOL promulgated regulations in 1967 in order to clarify the FLSA's tip credit provisions, 29 U.S.C. §§ 203(m) and (t). *See* 32 Fed. Reg.

---

[10] The version of § 203(t) enacted in 1966 remains in effect today. Although Congress amended § 203(m) into its current form in 1974, *see Or. Rest. & Lodging Ass'n*, 816 F.3d at 1084, the change to that provision is immaterial for purposes of this case. The dissent states that the 1974 amendments require the employer to prove "the amount of tip credit, if any," and faults the majority for not placing "the burden on the employer to show it can use the tip credit." Dissent at 51. But we are not called upon to consider which party bears the burden of proving the correct amount of tip credit; rather, we address the question whether the DOL's interpretation of the defined term "tipped employee" in § 203(t) merits deference, which is a question of law for the courts.

13,575–13,581 (Sept. 28, 1967). These regulations include the DOL's systematic explanation of each of the key words and phrases in the definition of "tipped employee" codified at § 203(t).

As part of the DOL's clarification of the statutory phrase "more than $30 a month in tips," the DOL promulgated the "dual jobs" regulation, which remains in effect today and contemplates that an employee can be "employed in a dual job," i.e., two different jobs.[11] 29 C.F.R. § 531.56(e). This regulation provides that if the employee is engaged in one occupation in which "he customarily and regularly receives at least $30 a month in tips," and is also engaged in a second occupation in which the employee does not receive the required amount of tips, then the employer can take a tip credit only for the first occupation. *Id.* The regulation gives one example of a situation where an employee is employed in a dual job: "where a maintenance man in a hotel also serves as a waiter." *Id.* It also gives two examples of situations where an employee is not employed in dual jobs: (1) "a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally

---

[11] The DOL's procedure for promulgating the dual jobs regulation is questionable in at least one respect: The DOL added the regulation after the notice and comment period and without reasoned explanation or forewarning. *See* 32 Fed. Reg. 13,575 (Sept. 28, 1967). J. Alexander's argues that this procedural defect renders the regulation unworthy of deference because "where a proper challenge is raised to the agency procedures, and those procedures are defective, a court should not accord *Chevron* deference to the agency interpretation." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016). Because this objection comes well after the statute of limitations period for procedural challenges to agency actions, we decline to reach the issue. *See Perez-Guzman v. Lynch*, 835 F.3d 1066, 1077–79 (9th Cir. 2016).

washing dishes or glasses"; and (2) a "counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group." *Id*.

Following the promulgation of the dual jobs regulation, employers requested guidance from the DOL regarding how to determine whether employees are engaged in a single occupation in which they receive more than $30 a month in tips, or instead have two occupations. This was a significant concern to employers, because if they violated the minimum wage rule they could be liable not only for "unpaid minimum wages," but also for "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

The DOL first attempted to provide a workable standard in a series of opinion letters issued between 1979 and 1985 (hereinafter, "Opinion Letters"). In its first letter on this issue, the DOL responded to the question whether employees who had been hired as waitresses, but were also required to "report to work two hours before the doors are opened to the public to prepare vegetables for the salad bar," were engaged in two different occupations. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA-895 (Aug. 8, 1979) (hereinafter, "1979 Letter"). Interpreting the dual jobs regulation, the DOL concluded that the "salad preparation activities are essentially the activities performed by chefs," and therefore the employer had effectively employed the workers in two occupations, one as waitresses and the other as chefs. *Id*. Accordingly, the DOL concluded that the employees were not "tipped employees" when engaged in the chef job, and "no tip credit may be taken for the time spent in preparing vegetables for the salad bar." *Id*.

The DOL addressed a similar question in an opinion letter issued the following year. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter WH-502 (Mar. 28, 1980), *available at* 1980 WL 141336 (hereinafter, "1980 Letter"). In that letter, the DOL answered the question whether employees hired as waiters and waitresses, but who were also required to "clean the salad bar, place the condiment crocks in the cooler, clean and stock the waitress station, clean and reset the tables . . . and vacuum the dining room carpet, after the restaurant is closed," were engaged in two different occupations. *Id.* The DOL concluded that these employees were engaged in a single tipped occupation because the after-hours duties were "assigned generally to the waitress/waiter staff" and there was no "clear dividing line between the types of duties performed by a tipped employee, such as between maintenance duties and waitress duties." *Id.* Therefore, it did not matter that some of the employees' duties were not "directed toward producing tips." *Id.* The DOL analogized the situation presented to that described in the dual jobs regulation, *id.*, which explains that "a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses" is not employed in two occupations, 29 C.F.R. § 531.56(e). Nevertheless, the DOL cautioned that a different rule might apply where "specific employees [are] routinely assigned, for example, maintenance-type work such as floor vacuuming." 1980 Letter.

In 1985, the DOL addressed the situation to which it had alluded in the 1980 Letter. A restaurant employer asked whether an employee who was hired as a waiter but was assigned to arrive at the restaurant at least two hours before opening to perform general preparatory duties was employed in two different occupations. U.S. Dep't of Labor, Wage &

Hour Div., Opinion Letter FLSA-854 (Dec. 20, 1985), *available at* 1985 WL 1259240 (hereinafter, "1985 Letter"). The DOL concluded that the general preparatory duties constituted a separate occupation, and "no tip credit may be taken for the hours spent by an assigned waiter or waitress in opening responsibilities." *Id.* In reaching this conclusion, the DOL cited as material that (1) "only one waiter or waitress is assigned to perform all preparatory activities," (2) these responsibilities "extend to the entire restaurant rather than to the specific area or customers which they serve," and (3) "the activities performed prior to the opening of the restaurant consume a substantial portion of the waiter or waitress'[s] workday." *Id.*

While the Opinion Letters provided case-by-case guidance as to when an employee is engaged in two separate occupations, some general principles can be derived from this guidance. Specifically, the DOL deemed an employee to be engaged in two different occupations when there was a "clear dividing line" between two different types of duties, such as when one set of duties was performed in a distinct part of the workday. *See* 1980 Letter (articulating the "clear dividing line" standard); *see also* 1979 Letter (concluding that an employee has dual jobs where the duties unrelated to tip generation were temporally separated from tip-generating duties). In addition, the DOL considered whether an employer assigned a set of distinct duties to a single employee and whether these duties occupied a significant

portion of the employee's time.[12]  *See* 1985 Letter; 1980 Letter.

In 1988, the DOL gave its field officers revised guidance for determining when an employee was engaged in two different occupations.  This guidance, which the DOL formalized in its FOH, introduced the concept that where "tipped employees spend a substantial amount of time (in excess of 20 percent) performing preparation work or maintenance, no tip credit may be taken for the time spent in such duties."  FOH § 30d00(e) (1988).[13]  This was a significant departure from the earlier guidance; instead of determining whether an employee was engaged in two jobs by looking for a "clear dividing line," as it did in the Opinion Letters, the DOL's 1988 guidance required an employer to sort the employees' tasks into two different categories (tip-generating tasks and related but not tip-generating tasks), determine whether the related tasks take up more than

---

[12] As the Opinion Letters demonstrate, the dissent errs in stating that the DOL has "consistently limited the amount of time a tipped employee can perform untipped work and still receive the tipped minimum wage." Dissent at 46.  The Opinion Letters properly focus on the regulatory question whether the employee is employed in dual jobs; the amount of time spent in a particular task is only one factor (if considered at all) in making that determination.  In the 1980 Letter, for example, the DOL focused exclusively on whether "after-hours clean-up" was "assigned generally," with no consideration of the time spent performing those duties.

[13] Although the DOL has since updated the FOH, the 1988 FOH guidance is reprinted in full in a publicly available amicus brief that the DOL filed in an Eighth Circuit case. *See* Brief for the Secretary of Labor as Amicus Curiae in Support of Plaintiffs-Appellees at 12–13, *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872 (8th Cir. 2011) (Nos. 10-1725/26), 2010 WL 3761133.

20 percent of the total time worked, and, if so, take a tip credit only for the time spent on tip-generating tasks. In effect, this required employers to take a time-tracking or "time sheet" approach, i.e., evaluating employee work on a duty-by-duty and minute-by-minute basis, to determine whether an employer could take a tip credit.[14]

In 2011, the DOL doubled down on its time sheet approach to the dual jobs regulation and presented the FOH § 30d00(e) (1988) as its official interpretation of the dual jobs regulation in an amicus brief to the Eighth Circuit. *See* Brief for the Secretary of Labor as Amicus Curiae in Support of Plaintiffs-Appellees at 12–13, *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872 (8th Cir. 2011) (Nos. 10-1725/26), 2010 WL 3761133. In its amicus brief, the DOL argued that the FOH § 30d00(e) interpreted the waitress example in the dual jobs regulation, which uses the phrase "part of her time" and the word "occasionally," by "affix[ing] a specific limit to the regulation's tolerance for the 'occasional' performance of such related duties, capping it at 20 percent of the tipped employee's time." *See id.* at 9.

---

[14] The DOL later acknowledged that this guidance had "resulted in some confusion and inconsistent application" by various courts and attempted to provide some clarification. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Jan. 16, 2009). In a 2009 opinion letter, the DOL indicated that an employee engaged in an occupation in which the employee customarily and regularly receives the requisite amount of tips can engage in any amount of duties related to that occupation, but not directed at generating tips, "so long as they are performed contemporaneously with direct customer-service duties and all other requirements of the [FLSA] are met." *Id.* Following a change in presidential administration, the DOL withdrew this guidance. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Mar. 2, 2009).

In 2012, the DOL took its FOH guidance a step further, resulting in the guidance now set forth in the FOH § 30d00(f) (2016), which the DOL presents as its current official interpretation of the dual jobs regulation.[15] This new version of the FOH guidance retains the rule that an employer cannot take a tip credit for time the employee spends performing "related duties" if those duties exceed 20 percent of the hours on the job. FOH § 30d00(f)(3). It also adds a new rule: An employer cannot take a tip credit for time spent in duties that are "not related" to generating tips. *Id*. § 30d00(f)(4). This new requirement imposes additional time-tracking duties: The employer must sort the employee's tasks into one of three categories (tip-generating, related but not tip-generating, or not related), and then apply the appropriate tip credit eligibility rules (eligible, eligible only if less than 20 percent of the total time worked, and ineligible, respectively).

As this history illustrates, the DOL's interpretations of the dual jobs regulation have evolved from requiring a determination as to whether an employee is "engaged in" two distinct jobs (as explained in the Opinion Letters) to focusing on what (in everyday language) would be called a single job that involves a range of intermingled duties that must be performed throughout the course of the day.

---

[15] In *Probert v. Family Centered Services of Alaska, Inc.*, we held that "it does not appear . . . that the FOH is a proper source of interpretive guidance" for purposes of *Chevron* deference. 651 F.3d 1007, 1012 (9th Cir. 2011). We need not decide whether *Probert* applies in the context of *Auer* deference, however, because the DOL has adopted the FOH's interpretations in its amicus brief, and it is well settled that we may defer to interpretations presented in such briefs. *E.g.*, *Christopher*, 567 U.S. at 155.

C

We now ask whether the DOL's interpretations in the FOH § 30d00(f) merit controlling deference under *Auer*. Because the FOH § 30d00(f) is both inconsistent with the regulation, *Auer*, 519 U.S. at 461, and attempts to "create de facto a new regulation," *Christensen*, 529 U.S. at 588, we conclude that it does not merit deference.

As its focus on "dual *jobs*" indicates, the dual jobs regulation interprets § 203(t)'s reference to employees "engaged in an occupation" to mean employed in a "job," not performing an activity. *See* 29 C.F.R. § 531.56(e) (emphasis added). When the regulation refers to minute-by-minute tasks or activities, it uses the term "duties" rather than "occupation."[16] *See id*. (referring to "related duties in an occupation"). This interpretation of "occupation" to mean "job" is consistent with the statute's most natural meaning. *See Perrin v. United States*, 444 U.S. 37, 42 (1979) (noting the general rule that statutory terms "will be interpreted as taking their ordinary, contemporary, common meaning"). Nothing in the FLSA's "context, structure, history, [or] purpose" suggests that Congress intended to use the term "occupation" in § 203(t) to mean discrete duties performed over the course of the day. *Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014) (internal quotation marks omitted). Indeed, the 1966 amendments at issue here governed how

---

[16] DOL regulations consistently interpret the term "occupation" to refer to a job, rather than to discrete tasks or duties. *See* 29 C.F.R. § 531.56(a) (referring to "[a]n employee employed full time or part time in an occupation"); *id*. § 531.57 (contemplating that a tipped employee in a qualifying occupation may take vacation or sick leave); *id*. (identifying specific "occupations" in which one might be engaged as "waiters, bellhops, taxicab drivers, barbers, or beauty operators").

employers were required to pay employees in jobs that were traditionally tipped, *see Or. Rest. & Lodging Ass'n*, 816 F.3d at 1083, without differentiating between employee duties in those jobs. Moreover, the FLSA consistently uses the word "occupation" to refer to jobs in particular industries, rather than to discrete tasks. *See, e.g.*, 29 U.S.C. § 203(l) (referring to employment in an occupation other than manufacturing and mining), § 214(b)(2) (referring to "any occupation in agriculture"). The best inference from the FLSA's consistent use of "occupation" as "job" is that § 203(t), like the other FLSA provisions discussing occupations, requires a job-based focus. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) ("[I]dentical words used in different parts of the same statute are generally presumed to have the same meaning."). Given the "common sense" understanding that § 203(t) focuses on jobs rather than duties, *Abramski*, 134 S. Ct. at 2267, coupled with the dual jobs regulation's use of that understanding, we reject Marsh's argument that § 203(t)'s language "engaged in an occupation" can be read to mean "engaged in an activity."[17]

---

[17] Marsh argues that because the FLSA is a remedial statute, it must "be liberally construed to apply to the furthest reaches consistent with Congressional direction." *Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000) (quoting *Biggs v. Wilson*, 1 F.3d 1537, 1539 (9th Cir. 1993)). The Supreme Court has held, however, that this principle does not apply where, as here, we interpret provisions of the FLSA's definitions section, § 203. *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 879 n.7 (2014) (citing *Christopher*, 567 U.S. at 164 n.21). As *Sandifer* made clear, the principle that "'exemptions' in the Fair Labor Standards Act 'are to be narrowly construed against the employers seeking to assert them'" applies only to "exemptions from the Act [that] generally reside in § 213, which is entitled 'Exemptions' and classifies certain kinds of workers as uncovered by various provisions." *Id*. Because the tip credit provisions here are found in § 203, rather than § 213, and do not exempt any employee from coverage under the minimum wage requirement, the

Consistent with its reading of "occupation" in § 203(t) to mean "job," the dual jobs regulation provides a common sense approach to defining what constitutes a "job." This regulatory approach relies on the everyday understanding that a job is comprised of a cluster of tasks typically associated with that job. In the regulation's example of a "dual job," a hotel employs an employee to work in two distinct jobs, one as a maintenance man and one as a waiter. 29 C.F.R. § 531.56(e). These jobs are ordinarily understood to involve different types of duties: While a maintenance man has a range of duties associated with keeping buildings or equipment in good repair, a waiter has a range of duties associated with serving customers at their tables in a restaurant. In common usage, these constitute distinct jobs. By contrast, the dual jobs regulation provides two examples of jobs comprised of a relevant cluster of tasks: A waitress is engaged in a single job so long as the range of duties she performs is typical for a waitress job (e.g., some cleaning, some food preparation), and a counterman is engaged in a single job so long as his range of duties is typical for that job (e.g., cooking some of his own orders, or taking a turn as a chef) and his fellow countermen share in those duties. *Id*. As these examples teach, if the employer has hired a person for one job (such as waitress or counterman), but that job includes a range of tasks not necessarily directed towards producing tips, the person is still considered a tipped employee engaged in a single job so long as the person "customarily and regularly receives at least $30 a month in tips." *Id.*; *cf. Schaefer v. Walker Bros. Enters., Inc.*, 829 F.3d 551, 555 (7th Cir. 2016) ("At some restaurants busboys

---

dissent's attempt to characterize the definitions at issue here as exemptions is contrary to *Sandifer*'s clear statement. *See* Dissent at 50–51.

remove dishes after diners have finished, while at others the servers perform this chore. So it is not helpful to ask . . . whether cooks or busboys or janitors do one or another task at other restaurants.").

Instead of providing further guidance on what constitutes a distinct job, the FOH § 30d00(f) takes an entirely different approach; it parses an employee's tasks into three separate categories (tip-generating, related to the generation of tips, or unrelated to the generation of tips), and then disallows tip credits on a minute-by-minute basis based on the type and quantity of the tasks performed. Because the dual jobs regulation is concerned with when an employee has two jobs, not with differentiating between tasks within a job, the FOH's approach is inapposite and inconsistent with the dual jobs regulation.

Most fundamentally, the FOH ignores the regulation's requirement to identify distinct jobs. Under the FOH § 30d00(f)(4), an employee is per se engaged in two jobs if the employee has spent any time at all on tasks not related to the tipped occupation. Under the FOH § 30d00(f)(2) and (3), an employee is per se engaged in two jobs if a time-tracking analysis shows that the employee has spent some minutes over the course of the day engaged in non-tipped tasks that are related to tipped tasks, and these minutes in the aggregate account for 20 percent or more of the hours worked over the course of a workweek. But as the regulation's examples indicate, an employee is not engaged in two distinct jobs merely because the employee performs different tasks over the course of the day; rather, the regulation requires an assessment whether a cluster of different tasks constitutes a particular job, as that job is ordinarily understood. Moreover, the FOH's minute-by-minute and task-by-task approach is

contrary to the statute, which considers only whether an employee is engaged in a single job that generates the requisite amount of tips. 29 U.S.C. § 203(t). Indeed, requiring an employer to analyze every minute of its employee's workday to assess tip credit eligibility would frustrate Congress's goal "to permit the continuance of existing practices with respect to tips." S. Rep. No. 89-1487, *supra* page 20, at 3014.

Not only is the FOH § 30d00(f) inconsistent with the regulation's approach to defining the word "job," it also produces outcomes that are contrary to the dual jobs regulation's examples of tipped employees engaged in a single occupation. For instance, under the FOH § 30d00(f)'s approach, an employer would be required to track the time a counterman spends working as a chef preparing short orders, which is not a tip-generating task, and determine whether the cooking duty took up more than 20 percent of the counterman's time.[18] But the regulation requires no such inquiry; as long as the task of preparing short orders is generally assigned to all countermen, the counterman is engaged in only his single tipped occupation. *See* 29 C.F.R. § 531.56(e). The FOH § 30d00(f) methodology could result in an outcome whereby the counterman would be treated as having two jobs, even though the regulation says he has only one.

---

[18] The regulation deems the preparation of short orders to be "related" to the counterman's job, 29 C.F.R. § 531.56(e), so in this hypothetical the employer would not have to determine whether preparation of short orders constitutes "unrelated" duties. *But see* 1979 Letter (advising that salad preparation is a chef duty not related to the job of waitress).

In short, to the extent the FOH § 30d00(f) approach provides an interpretation of the dual jobs regulation at all, it provides one that is inconsistent with both the regulation's approach to determining whether an employee has two distinct jobs and with the statute's direction that any person engaged in a job that generates the requisite amount of tips is a "tipped employee." In effect, the FOH § 30d00(f) creates an alternative regulatory approach with new substantive rules that regulate how employees spend their time. This is "de facto a new regulation" masquerading as an interpretation, and we decline to defer to it.[19] *Christensen*, 529 U.S. at 588.

Arguing against this conclusion, Marsh claims that the dual jobs regulation is ambiguous because it uses the terms "part of her time" and "occasionally" in the waitress example.[20] Because the DOL can interpret its ambiguous regulation, Marsh contends that the FOH 30d00(f)'s interpretation of those words merits *Auer* deference. In making this argument, Marsh primarily relies on the Eighth Circuit's decision in *Fast v. Applebee's Int'l, Inc.*, which

---

[19] Because the FOH § 30d00(f) is inconsistent with the regulation and the statute, the FOH § 30d00(f) is also unpersuasive and not entitled to deference under *Skidmore*. *See Christopher*, 567 U.S. at 159.

[20] We are doubtful that the phrase "part of her time" and the word "occasionally" in the dual jobs regulation's waitress example make that example ambiguous. The regulation merely describes the cluster of activities that are typically part of a waitress job, and leaves to a case-by-case determination the question whether an employee with a slightly different mix of activities would still be a waitress or would have two different jobs.

deferred to the DOL's interpretation in the FOH.[21]  638 F.3d 872, 879 (8th Cir. 2011).

In *Fast*, the Eighth Circuit first determined that the dual jobs regulation was ambiguous because "[b]y using the terms 'part of [the] time' and 'occasionally,' the regulation clearly places a temporal limit on the amount of related duties an employee can perform and still be considered to be engaged in the tip-producing occupation," yet the regulation does not define the term "occasionally." *Id*. at 879 (second alteration in original).  The Eighth Circuit noted that other courts relied on temporal limits to determine whether an employee was engaged in dual jobs, citing *Myers v. Copper Cellar Corp*., 192 F.3d 546, 549–50 (6th Cir. 1999), which held "that servers who spent entire shifts working as 'salad preparers' were employed in dual jobs." *Fast*, 638 F.3d at 880.  By contrast, "where the related duties are performed intermittently and as part of the primary occupation, the duties are subject to the tip credit." *Id*. (citing *Pellon v. Bus. Representation Int'l, Inc*., 528 F. Supp. 2d 1306, 1313 (S.D. Fla. 2007), *aff'd*, 291 Fed. App'x 310 (11th Cir. 2008)).  The Eighth Circuit concluded that the DOL's interpretation was reasonable because "[t]he 20 percent threshold used by the DOL in its Handbook is not inconsistent with § 531.56(e) and is a reasonable interpretation of the terms 'part of [the] time' and 'occasionally' used in that regulation." *Id*. (second alteration in original).  The Eighth Circuit did not explain why using 20 percent (rather than some other percent of the workweek) was reasonable, other than to reference DOL

---

[21] The Eighth Circuit deferred to an earlier DOL interpretation codified at the FOH § 30d00(e) (1988), but the differences between that interpretation and the one presented here are immaterial to our analysis.

regulations in other contexts that had imposed a 20 percent temporal limitation.  *See id.*

We disagree with the Eighth Circuit's *Auer* analysis on several grounds.  Most important, the Eighth Circuit failed to consider the regulatory scheme as a whole, and it therefore missed the threshold question whether it is reasonable to determine that an employee is engaged in a second "job" by time-tracking an employee's discrete tasks, categorizing them, and accounting for minutes spent in various activities. The Eighth Circuit focused on a few words in the regulation ("part of her time" and "occasionally"), *id.* at 880, that in context merely explain that a waitress who engages in a range of typical tasks over the course of the day is not in a dual job. The Eighth Circuit ignored the regulation's second example of an employee *not* engaged in a dual job, i.e., the counterman, which does not include any language imposing a temporal limitation on the amount of time that could be spent engaging in related activities.[22]  29 C.F.R. § 531.56(e). Because the Eighth Circuit narrowly focused on a few words out of context, it failed to grapple with the crucial question whether the FOH's time sheet approach is a reasonable

---

[22] The dissent contends that the language "takes a turn" in the counterman example expresses a temporal limitation.  Dissent at 45.  We disagree.  Nothing in the regulation's text would prohibit four countermen from taking turns as the short order cook for equal periods during a shift, such that each counterman spends 25 percent of the shift performing the duty.   That arrangement, which the regulation's text allows, is incompatible with the DOL's arbitrary 20 percent threshold.   If the counterman example no longer reflects contemporary practice, as the dissent suggests, *see id.* at 45 n.3, the solution is to amend the regulation or the statute, not to craft a new rule under the guise of interpreting the current unambiguous language.

interpretation of "job" (in the regulation) or "occupation" (in the statute).

Moreover, the very cases that the Eighth Circuit cited to support its ruling, *Myers* and *Pellon*, suggest that the FOH's approach is unreasonable. These cases hold, consistent with the dual jobs regulation and the Opinion Letters, that in order for an employee to be engaged in two different occupations there must be a clear dividing line between two different types of duties, such as when one set of duties is performed in a distinct part of the workday. *Compare Myers*, 192 F.3d at 549–50 (holding that a waitress's shift as a salad preparer was a dual job), *with* 1979 Letter (similar). As *Fast* summarized the rule from *Pellon*, "where the related duties are performed intermittently and as part of the primary occupation, the duties are subject to the tip credit." *Fast*, 638 F.3d at 880. Such intermittent duties are not a second "job" as that word is reasonably understood. Yet under the FOH, such intermittently performed duties may be treated as a second job for which the employer may not take a tip credit.

Finally, we disagree with *Fast*'s conclusion (and the DOL's argument) that the DOL's prescription of a specific temporal limit on certain duties (i.e., 20 percent of the total time worked) is a reasonable method for determining when an employee has a second job. The Eighth Circuit upheld this arbitrary temporal limitation in part because it is consistent with temporal limitations in other parts of the FLSA's regulatory regime. *See id*. at 881. But this fact is irrelevant because each example of a temporal cap that the DOL and *Fast* cite was either legislatively enacted or promulgated through notice and comment rulemaking. *See* 29 U.S.C. § 213(c)(6); 29 C.F.R. §§ 552.6(b), 786.1, 786.100, 786.150, 786.200; *Fast*, 638 F.3d at 881. By allowing the DOL to

impose a substantive 20 percent cap on the performance of certain duties under the guise of interpreting the word "occasionally," the Eighth Circuit contravened the rule that agencies not be allowed to create new substantive regulations through interpretation. *See Christensen*, 529 U.S. at 588. Although the regulations that the DOL cites may be permissible constructions of the FLSA provisions they implement, that tells us nothing about whether the FOH § 30d00(f) is consistent with the text of the dual jobs regulation and § 203(t).[23]

In short, the Eighth Circuit did not properly consider whether the FOH was consistent with the regulation, *Auer*, 519 U.S. at 461, whether deference would allow the agency to "create de facto a new regulation," *Christensen*, 529 U.S. at 588, or whether the interpretation would be consistent with § 203(t). Accordingly, we reject Marsh's argument that we should adopt *Fast*'s approach.[24]

---

[23] For the same reason, we reject the dissent's argument that the FOH § 30d00(f) is not inconsistent with the dual jobs regulation because *other* regulations require employers to track an employee's time. *See* Dissent at 49 (citing 29 C.F.R. § 516.28(a)). The proper question is whether the FOH § 30d00(f) is consistent with the regulation it purports to interpret, not whether it bears some similarity to other aspects of the FLSA's statutory and regulatory scheme.

[24] Marsh argues that the Seventh Circuit, like the Eighth, has deferred to the DOL's interpretation of the dual jobs regulation. We disagree. In *Driver v. AppleIllinois, LLC*, the Seventh Circuit considered whether to grant a petition to appeal a denial of class certification. 739 F.3d 1073, 1074 (7th Cir. 2014). When discussing the case's background, *Driver* mentioned the DOL's interpretation of the dual jobs regulation in order to provide context to the class definition in issue. *See id.* at 1075. *Driver* was not presented with, and did not decide, the question whether *Auer* compels deference to the DOL's interpretation. More recently, the

After exhausting his legal arguments, Marsh urges us to consider that the FOH's approach to the dual jobs inquiry simply "makes sense." He contends that an employer should not be able to hire an employee for a job that is traditionally tipped, but then require the employee to engage in tasks associated with a job that is traditionally not tipped. According to Marsh, the dual jobs regulation and Opinion Letters do not adequately address this problem, and so the DOL must be free to step in with a solution. Our task, however, is not to pass on the wisdom of the FOH's approach, but to determine whether the DOL can enforce this approach in the guise of interpreting a regulation. We hold only that, at present, no provision with the force of law permits the DOL to require employers to engage in time tracking and accounting for minutes spent in diverse tasks before claiming a tip credit. Our decision today does not prevent the DOL from attempting to promulgate this approach through rulemaking, nor prevent Congress from requiring such an approach through legislation.

## III

Our refusal to defer to the FOH § 30d00(f) does not mean that other guidance from the DOL might not warrant

---

Seventh Circuit held that the evidence before it did not establish a violation of the FLSA even under the FOH, and therefore did not reach the question whether the FOH merited deference. *See Schaefer*, 829 F.3d at 554–55.

Because we reject *Fast* as unpersuasive, we also find unpersuasive those district court cases that have followed *Fast*'s approach without serious consideration or analysis of *Fast*'s errors. *See, e.g.*, *McLamb v. High 5 Hospitality*, 197 F. Supp. 3d 656, 662–63 (D. Del. 2016); *Flood v. Carlson Rest. Inc.*, 94 F. Supp. 3d 572, 582–83 (S.D.N.Y. 2015).

deference. The DOL's prior Opinion Letters, for example, consider whether there is a "clear dividing line" between two different types of duties, *see* 1980 Letter, whether one set of duties is performed in a distinct part of the workday, *see* 1979 Letter, or whether duties that do not produce tips are generally assigned, *see* 1985 Letter. We need not decide here whether the Opinion Letters merit deference, however, because Marsh conceded at oral argument that his "related" and "unrelated" duties were all intermingled with the performance of duties directed at generating tips. *See* supra at 15, note 7. But because Marsh's concession is in tension with certain allegations in the proposed amended complaint, e.g., that some of his cleaning tasks (such as wiping down tables for 20 minutes after each closing shift) were temporally separated from serving customers, the proper course here is to remand to the district court to permit Marsh the opportunity to propose an amended complaint that focuses his allegations in light of our holding today.[25] *Cf. Mark H. v. Lemahieu*, 513 F.3d 922, 939 (9th Cir. 2008) (clarifying the law and then remanding for an opportunity to propose an amended complaint in light of the clarification). On remand, if Marsh alleges facts that state a claim by reference to DOL guidance other than the FOH § 30d00(f), such as the Opinion Letters, the district court may consider in the first instance

---

[25] This disposition is the same for all plaintiffs in these consolidated appeals. In Crystal Sheehan's appeal, the defendant asks us to affirm on the alternative ground that the statute of limitations bars Sheehan's claim. We decline this invitation, as we believe that this argument would benefit from further development in the district court, including possible discovery on the issue of the willfulness of any alleged FLSA violation. *See* 29 U.S.C. § 255(a); Fed. R. Civ. P. 56(d). We leave to the district court's sound discretion how to proceed with the resolution of this question on remand.

whether deference is owed to such guidance, and whether the facts alleged state a claim.

In sum, Marsh cannot state a claim under § 206(a) by alleging that discrete "related" tasks or duties, which were performed intermittently over the course of the day and were intermingled with his duties directed at generating tips, comprise a dual job when aggregated together over the course of a workweek. Performance of dispersed, related, and generally assigned duties is consistent with the waitress and counterman examples in the dual jobs regulation, which are examples of employment in a single tipped occupation. 29 C.F.R. § 531.56(e). Marsh also cannot state a claim by alleging the performance of "unrelated" duties that were similarly dispersed and generally assigned; that, too, is inconsistent with the concept of a dual job. We do not reach or decide whether allegations that an employee performed general maintenance work for an extended period before or after customer interaction began or ended rises to the level of a dual job.[26]

---

[26] We reject J. Alexander's argument that we can affirm on the district court's alternative determination that Marsh failed to state a minimum wage claim under 29 U.S.C. § 206(a) because he failed to allege that he earned less than minimum wage in any given workweek. This argument relies on *United States v. Klinghoffer Brothers Realty Corp.*, in which an employer required its employees to work extra hours without pay. 285 F.2d 487, 490 (2d Cir. 1960). The Second Circuit held that this practice did not violate the FLSA's minimum wage requirements so long as the employees received the minimum wage for each hour worked when the total weekly pay was divided by the total number of hours worked. *Id.*; *see also Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999) (holding that a district court did not err in applying a similar approach). In order to avoid FLSA liability under *Klinghoffer*'s approach, an employer must pay its employees more than the minimum wage. Because an employer relying on a tip credit to comply with the FLSA

Although we agree with the district court that the FOH § 30d00(f) does not warrant *Auer* deference, we vacate the final orders and judgments in these cases and remand to allow the plaintiffs opportunities to propose new amended complaints in light of this opinion.[27]

**VACATED AND REMANDED.**

---

PAEZ, Circuit Judge, concurring and dissenting:

Contrary to the majority, I would defer to the Department of Labor's ("DOL") interpretation of 29 C.F.R. § 531.56(e), the tipped minimum wage regulation at issue in this case.[1]

---

never pays more than minimum wage to an employee, *see* 29 U.S.C. § 203(m) (allowing an employer to take a tip credit only for the amount of tips necessary to ensure that the employee receives the minimum wage), *Klinghoffer* is not applicable here. Therefore, Marsh's complaint and proposed amended complaint alleged that J. Alexander's paid Marsh less than minimum wage over the course of a workweek because he had two jobs within the meaning of § 531.56(e) and was not paid the minimum wage for the second job.

[27] The parties will bear their own costs on appeal. *See* Fed. R. App. P. 39(a)(4).

[1] I agree with the majority that the dispositions below should be vacated and remanded, but I would remand for further proceedings on the merits of the plaintiffs' claims as alleged. On several other minor points, I also agree with the majority. I agree that *Probert*'s suggestion that the Field Operations Handbook ("FOH") was not "a proper source of interpretative guidance" does not govern our *Auer* deference analysis. Opin. at 27 n.15. *Probert v. Family Centered Servs. of Alaska., Inc.*, 651 F.3d 1007, 1012 9th Cir. 2011). I also agree that the wage averaging scheme described in *United States v. Klinghoffer Bros. Realty Corp.*,

Employees paid the tipped minimum wage for untipped work are underpaid.[2]  Recognizing this problem, the DOL issued guidance clarifying that under § 531.56(e), employers must pay their tipped employees the full minimum wage when such employees spend a substantial amount of time performing untipped work.  Because the DOL's guidance interpreted its own ambiguous regulation, and is neither plainly inconsistent with that regulation nor erroneous, it is entitled to *Auer* deference.  For the reasons discussed below, I would follow the Eighth Circuit's persuasive opinion in *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872 (8th Cir. 2011), and defer to the DOL's important, necessary, and sound guidance.  Accordingly, I respectfully dissent from this part of the majority's opinion.

## I.

An agency's interpretation of its own ambiguous regulation is ordinarily entitled to deference, because an agency's own regulation "reflect[s] the considerable experience and expertise the [agency] ha[s] acquired over time with respect to the complexities of the [statute]." *Gonzales v. Oregon*, 546 U.S. 243, 256 (2006).  We will decline to apply *Auer* deference *only* where the agency's interpretation is "plainly erroneous or inconsistent" with the regulation.  *Auer v. Robbins*, 519 U.S. 452, 461 (1997)

---

285 F.2d 487, 490 (2d Cir. 1960) is not applicable here.  Opin. at 40–41 n.26.  I therefore concur in these aspects of the majority's opinion.

**[2]** *See* William Whittaker, Cong. Research Serv., RL33348, The Tip Credit Provisions of the Fair Labor Standards Act 2–3 (2006) (explaining that waiters and other service employees were not covered by the FLSA until 1966, at which point Congress introduced the tipped minimum wage so that such employees would receive the minimum wage).

(internal quotation marks and citation omitted) (describing the standard as "deferential"). Where an agency's interpretation is plainly erroneous or inconsistent, we will still defer to it, but only "proportional to the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159 (2012) (internal quotation marks and citations omitted).

I part ways with the majority at each step of the *Auer* deference analysis. First, § 531.56(e) is ambiguous, as it employs undefined terms like "occasionally," and provides two examples which, at first pass, appear to conflict. Second, the DOL's interpretation of this ambiguous regulation has been consistent over time. The DOL has consistently stated that the amount of time a tipped employee can spend on untipped work is limited. The DOL's guidance setting that limit at 20% of an employee's time is also consistent with other Fair Labor Standards Act ("FLSA") provisions. In contrast, as I understand its reasons for vacating and remanding, the majority would require Marsh to show a "clear dividing line" between, or distinct hours for, different jobs, a requirement which *is* inconsistent with DOL guidance, and would read out key regulatory provisions. The majority also errs as the regulations embrace time tracking with respect to each occupation. Third, underlying these errors, the majority fails to apply the narrow construction principle and mistakenly places the burden of proof on the employee.

## II.

## A.

Section 531.56(e) provides:

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation . . . no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends *part of her time* cleaning and setting tables, toasting bread, making coffee and *occasionally* washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who . . . *takes a turn* as a short order cook for the group. . . .

29 C.F.R. § 531.56(e) (emphasis added).

Section 531.56(e) is ambiguous. First, § 531.56(e) uses ambiguous terms, including "occasional[]" and "part of [the] time," without defining them. The majority does not provide any definition of the terms nor does it explain why or how these terms are unambiguous. Opin. at 33 n.20. The Eighth Circuit in *Fast*, by contrast, does explain that the use of the term "occasionally" is ambiguous because it does not explain for how much time an employer can assign untipped work, and still treat that work as "occasional." 638 F.3d at 879. I would join the Eighth Circuit's persuasive holding that the regulation is ambiguous.

Second, § 531.56(e) is ambiguous because it includes two examples which, at first glance, seem to conflict. While the regulation explains that a waitress cannot be paid the tipped minimum wage for more than "part [] time [or] occasional[ ]" work "cleaning and setting tables, toasting bread, making coffee and . . . washing dishes or glasses," the majority reads the regulation to allow a counterman to be paid the tipped minimum wage for any amount of time spent on work "prepar[ing] short orders." Opin. at 32; 29 C.F.R. § 531.56(e). The majority's reading ignores crucial text in § 531.56(e) which does place a temporal limit on a counterman's work as a short order cook. For example, the regulation allows a counterman to be paid the tipped minimum wage when he "takes a turn as a short order cook for the group," which indicates a limit on the amount of time he can work as a short order cook and still be paid the tipped minimum wage. 29 C.F.R. § 531.56(e).[3] In any case, any confusion regarding how to harmonize the two examples only

---

[3] The counterman example may be confusing as a result of when the regulation was promulgated—1967. *Fast*, 638 F.3d at 878. It may have been the case that in 1967 customers tipped countermen to cook short orders in their presence. DOL's December 2016 Fact Sheet makes clear that countermen are tipped employees only when they "serve customers." U.S. Department of Labor, Wage and Hour Division Fact Sheet # 15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (rev. Dec. 2 0 1 6 ) , *a v a i l a b l e a t* https://www.dol.gov/whd/regs/compliance/whdfs15.htm. (last visited August 22, 2017).

The majority's example of a four counterman group spending 25% of their time cooking short orders explains precisely why the regulation is ambiguous and guidance was due. Opin. at 35 n.22. A four counterman group would cause each counterman to perform more than occasional untipped work, while a five counterman group would only occasionally, or 20% of the time, cook orders.

demonstrates that the regulation is ambiguous. Because the regulation is ambiguous, the next step of the *Auer* analysis is to determine whether the DOL's interpretation is "plainly erroneous or inconsistent." 519 U.S. at 461.

**B.**

The DOL's interpretation is far from "plainly erroneous or inconsistent" and is instead, consistent with nearly four decades of interpretive guidance and with the statute and the regulation itself. *Id.* The DOL's guidance at issue, in its Field Operations Handbook ("FOH"), provides that where "tipped employees spend a substantial amount of time (*i.e.*, in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing [] related [untipped] duties, no tip credit may be taken for the time spent in those duties." FOH § 30d00(f) (2016).

First, § 531.56(e) and the DOL's interpretive guidance have consistently limited the amount of time a tipped employee can perform untipped work and still receive the tipped minimum wage. We have held that a consistent view over twenty-five years is a an "extended period of time" meriting "[s]pecial deference." *Bassiri v. Xerox Corp.*, 463 F.3d 927, 933 (9th Cir. 2006) (internal citations and quotation marks omitted). Section 531.56(e) was promulgated in 1967, and itself places temporal limits on untipped work by using the phrases "occasional[]," "part of [the] time," and "takes a turn." Since 1979, the DOL has issued opinion letters, fact sheets, amicus briefs, and the FOH which have consistently placed temporal limits on untipped work. *See* Brief for the Secretary of Labor as Amicus Curiae in Support of Plaintiffs-Appellants, *Marsh v. J. Alexander's LLC*, Nos. 15-15791+ (9th Cir. July 13, 2016) ("DOL Amicus

Brief"), at 8–10. As the Eighth Circuit explained in *Fast*, the FOH drew from prior opinion letters, including the 1980 letter describing a waitress working after hours cleaning, and the 1985 letter describing a waiter performing preparatory work for 30% to 40% of her time, when it set a 20% threshold on the amount of time a tipped employee could perform untipped work. 638 F.3d at 878. Over thirty-eight years, the DOL has consistently interpreted § 531.56(e) to involve a temporal limit, and this interpretation is also consistent with the regulation itself.[4]

Second, the 20% threshold is also consistent with other DOL provisions containing temporal limitations. Congress and the DOL have defined occasional in many other FLSA provisions to mean 20%. *See* 29 U.S.C. § 213(c)(6)(G); 29 C.F.R. § 552.5; 29 C.F.R. § 552.6(b); 29 C.F.R. § 786.150;

---

[4] The majority points to the 1980 Opinion Letter as an example in which the DOL did not consider the time spent performing those duties. I disagree, as the 1980 Letter embraced time limits when it explained that "routine[]" untipped work would not be permissible. 1980 Opinion Letter.

The majority also suggests that the FOH is inconsistent with § 531.56(e) because it treats duties related and unrelated to tipped work differently. Opin. at 27. But the regulation itself distinguishes between related and unrelated work, for example in allowing a waitress to be paid the tipped minimum wage for limited time setting tables and making coffee, but disallowing a waiter to be paid the tipped minimum wage for any time spent as a janitor. Moreover, the DOL's guidance has also consistently distinguished between related and unrelated duties. *See, e.g.*, U.S. Dep't Labor, Wage & Hour Div., Opinion Letter FLSA-895 (Aug. 8, 1979) ("1979 Opinion Letter") (disallowing a waitress to be paid the tipped minimum wage for time spent preparing vegetables for the salad bar); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter Fair Labor Standards Act, WH-502, 1980 WL 141336 ("1980 Opinion Letter") (allowing a waiter to be paid the tipped minimum wage for restocking the waiter station, but not for maintenance work).

29 C.F.R. § 786.1; 29 C.F.R. § 786.100; 29 C.F.R. § 786.200. The DOL explained in its amicus brief in this case that it derived the 20% threshold from these provisions. DOL Amicus Brief, at 19, n.6; *see also Fast*, 638 F.3d at 881 (deferring to the FOH in part because the 20% threshold drew from numerous other FLSA provisions). The 20% threshold is consistent across the FLSA statutory scheme and implementing regulations.

The majority's holding that the DOL's interpretation was inconsistent errs in several regards. First, I read the majority to require Marsh to allege a "clear dividing line" between time spent on tipped and untipped work (for example, untipped work performed before or after the restaurant is open to customers) on remand, but this requirement is inconsistent with § 531.56(e) and the DOL's interpretive guidance. Opin. at 39. The 1980 Opinion Letter explains that "where there is a clear dividing line *between the types of duties* performed by a tipped employee, . . . no tip credit may be taken for the time spent . . . performing maintenance duties." 1980 Opinion Letter. In other words, the phrase "clear dividing line" in the opinion letter referred to a division between "types of duties" rather than a division on the basis of hours, and moreover, the letter actually approved of limited "after-hours" duties related to tipped work. 1980 Letter. And the 1979 Letter upon which the majority relies, concluded that waitresses must be paid the full minimum wage because the work performed was similar to a chef's work, *not* because it was performed during a distinct part of the day. 1979 Letter; Opin. at 39. The majority's requirement is therefore misplaced and inconsistent with the DOL's guidance.

Second, the majority asserts that the FOH is inconsistent because it requires employers to analyze duties or tasks rather than jobs or occupations. Opin. at 28. The regulation provides that "[a]n employee who receives tips . . . is a 'tipped employee' . . . *when, in the occupation in which he is engaged,* the amounts he receives as tips [exceed the requisite amount]." 29 C.F.R. § 531.56(a). I agree with the Eighth Circuit that the phrase "engaged in" requires the DOL to interpret precisely when an employee is performing tipped work, including by looking at when the employee performs untipped duties like those of a janitor. *See Fast*, 638 F.3d at 879–80. Moreover, § 531.56(e) itself discusses both duties and occupations. *See* 29 C.F.R. § 531.56(e) (referring both to "two occupations" and "related duties in an occupation").

Third, the majority erroneously asserts that the FOH's interpretation is inconsistent with the statute and regulations because it requires keeping track of the employee's time, while Congress intended "to permit the continuance of existing practices with respect to tips." Opin. at 31–32; S. Rep. No 89-1487 (1966) *reprinted in* 1966 U.S.C.C.A.N. 3002, 3014. To the contrary, the FOH requires employers to track an employee's time in a manner that is consistent with other DOL guidance regarding the tipped minimum wage. FOH § 30d00(f) (2016). For example, 29 C.F.R. § 516.28(a) requires employers to maintain records of each hour an employee receives tips and each hour she does not. Any FOH time tracking requirement is consistent with the DOL's tipped minimum wage guidance.[5]

---

[5] The majority asserts that we should look only to the regulation to determine consistency. Opin. at 37 n23. But the majority contradicts itself, as it also correctly asserted that we look to prior interpretations and pronouncements to determine consistency under *Auer*. Opin. at 18 n.9.

## C.

Finally, underlying these errors, the majority fails to apply the narrow-construction principle to the tipped minimum wage. Opin. at 29–30 n.17. In my view, the tipped minimum wage is an exemption in the FLSA that should be construed narrowly against employers. The "FLSA is to be construed liberally in favor of employees [and] exemptions are narrowly construed against employers." *Haro v. City of Los Angeles*, 745 F.3d 1249, 1256 (9th Cir. 2014) (citation omitted). The majority points to two recent Supreme Court cases which held that the narrow-construction principle did not apply to two provisions in the FLSA definitions section, the section which also contains the tipped minimum wage. Opin. at 29–30 n.17; *See Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 879 n.7 (2014) (holding the narrow-construction principle inapplicable to a definitions provision regarding doffing clothing because narrowly construed exemptions "*generally* reside in § 213, which is entitled 'Exemptions' and classifies certain kinds of workers as uncovered by various provisions") (emphasis added); *see also id*. (Sotomayor, J., declining to join footnote 7); *SmithKline*, 567 U.S. at 164 n.21 (holding the narrow-construction principle inapplicable to the "sale" definition because it was "a general definition that applies throughout the FLSA"). The tipped minimum wage is distinct from these definitional FLSA provisions, however. Unlike "sale," the provision at issue in *SmithKline*, the tipped minimum wage is not a definition which applies throughout the FLSA. 567 U.S. at 164 n.21. Likewise, the tipped minimum wage more closely resembles the exemptions in § 213 which have "generally" been the subject of the narrow construction principle. *See* 29 U.S.C. § 213 (excluding from the minimum wage classes of employees including executives and professionals, outside salesmen,

amusement park employees, fishers, and farmers); *Sandifer*, 134 S.Ct. at 879 n.7. Further, we have held that the related tip pool requirements should be narrowly construed, *see Oregon Rest. & Lodging Ass'n v. Perez*, 816 F.3d 1080, 1090 (9th Cir. 2016), and, post-*Sandifer* and *SmithKline*, that a provision defining employees "engaged in fire protection" should be narrowly construed, *see Haro*, 745 F.3d at 1256. I would, accordingly, consider the tipped minimum wage an exemption, although it arises in the definitions section of FLSA, and give it a narrow construction.

Relatedly, the majority fails to place the burden on the employer to show it can use the tip credit. DOL Amicus Brief, at 25. Congress made clear that it intended for employers to prove the requirements of the tip credit. S. Rep. No. 93-690, at 43 (1974) ( "[T]he original intent of Congress [was] to place on the employer the burden of proving . . . the amount of tip credit, if any, which such employer is entitled to claim."); *see Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir.1979) (recognizing that employers bear the burden); *see also Perez v. Lorraine Enters., Inc.*, 769 F.3d 23, 27 (1st Cir. 2014) (same); *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 549 n. 4 (6th Cir. 1999) (same). The majority's improper allocation of the burden and failure to apply the narrow-construction principle underlie and potentially explain its errors.

## III.

Because the DOL's guidance interpreted an ambiguous regulation, and did so in a manner that was not "plainly erroneous or inconsistent," it is entitled to *Auer* deference. I would, accordingly vacate the district court's orders granting the motions to dismiss, judgments on the pleading, and the

order granting summary judgment, and remand for further proceedings on the key issue of whether the defendants violated the FLSA by paying its employees well below minimum wage for untipped work.